IN THE MATTER OF WILFRED B. KEENAN.

Suffolk. April 3, 4, 1934. — September 12, 1934.

Present: RUGG, C.J., PIERCE, FIELD, & LUMMUS, JJ.

*Attorney at Law*, Disbarment. *Evidence*, Declaration of deceased person. *Words*, "Action."

A proceeding for the disbarment of an attorney at law is an "action" to which the provisions of G. L. (Ter. Ed.) c. 233, § 65, are applicable.

At a hearing in proceedings for the disbarment of an attorney at law, there were offered in evidence, under G. L. (Ter. Ed.) c. 233, § 65, to corroborate testimony that the attorney had corruptly influenced jurymen, statements which had been made by a juryman under oath after a promise of immunity to him by the Attorney General and which were taken down by a stenographer and transcribed. The declarant had died two and one half months after making the statements and before the hearing and they were presented in evidence by a properly identified copy. They were categorical, detailed and plenary, and amply supported a finding that the attorney was guilty of the conduct charged. From them it appeared that the declarant was a self-confessed bribe taker. The single justice found that the declarations were made in good faith and upon the personal knowledge of the declarant, and admitted them. *Held*, that

(1) Such preliminary findings, being supported by evidence, must stand;

(2) The circumstance that the declarant was a self-confessed taker of a bribe and was promised immunity did not render his statements inadmissible;

(3) The mere fact that no cross-examination of the declarant was possible did not affect the admissibility of the statements as evidence.

Upon petition by citizens of the Commonwealth, the Supreme Judicial Court for the county of Suffolk appointed a commissioner to inquire respecting unprofessional conduct of members of the bar, no member being specified. Conduct of the attorney at law above mentioned was examined by the commissioner and the attorney testified before him. In his investigation and in the course of his hearings, the commissioner took from the juryman the statements under oath above described. Thereafter, on the commissioner's recommendation, an order of notice was issued by the court to the attorney to show cause why he should not be disbarred. At the hearing upon that order of notice, the statements of the juryman, then deceased, were admitted in evidence, the single justice having found, together with the other preliminary findings above described, that the statements were made before the charges against the attorney were filed in court. *Held*, that

(1) The finding by the single justice, so far as it was a finding of fact, must stand;

(2) The preliminary investigation by the commissioner was not a disbarment action against the attorney afterwards summoned to show cause; the disbarment action did not commence until the order to show cause issued;

(3) The statements were made "before the commencement of the action" and therefore satisfied that requirement of the statute.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on December 1, 1931, by certain citizens of the Commonwealth, and described in the opinion.

Hearings by a commissioner appointed under the prayers of the petition, an order of notice issued to Wilfred B. Keenan, evidence at hearings by *Donahue*, J., and his findings and rulings are described in the opinion. The single justice directed an order of disbarment. The respondent alleged exceptions.

*G. Alpert*, (*A: L. Brown & E. Brown* with him,) for the respondent.

*H. S. Davis*, (*F. A. Crafts* with him,) appointed by the court to conduct the proceedings.

RUGG, C.J.   This is a proceeding for the disbarment of an attorney at law. An original petition was filed on

December 1, 1931, on behalf of a committee of citizens of the Commonwealth. There were in it allegations that abuses and unprofessional conduct on the part of members of the bar existed in connection with actions of tort for personal injuries and property damages, and that public confidence.in the administration of justice was being seriously shaken by the widespread belief that unprofessional conduct was common among members of the bar concerning such cases and that the public welfare was being affected by clogging the dockets of the courts and delaying the disposition of proper litigation. It was not directed against any particular person or group. No lawyer or other person was named as having offended. It contained a prayer that an inquiry be ordered and an offer to defray the expenses of such inquiry outside the usual fees of a commissioner appointed by the court to hold necessary hearings. An order was entered directing the inquiry. Two special commissioners were appointed. The general inquiry went forward. Hearings were had before one of these commissioners respecting alleged conduct of the respondent, who also appeared before him and testified. Many of these hearings were held prior to February 1, 1933. The commissioner filed a report concerning the respondent, which was described as his thirteenth report. Manifestly this commissioner earlier had made many investigations and filed twelve reports before the one here in issue. That report recommended that proceedings be taken for the disbarment of the respondent. It was filed on March 31, 1933. On that date order of notice returnable on April 18, 1933, issued to the respondent to show cause why the recommendation should not be followed. There was a trial before a single justice. It was agreed at the trial that the commissioner's report was not to be considered as evidence against the respondent but that the trial should be had upon the issues raised in that report. Testimony was introduced tending to show that the respondent corruptly influenced or corruptly attempted to influence a juryman or jurymen in five different cases tried in Suffolk County. As to one of those cases this

testimony was found to be adequately corroborated, and the respondent was found to have corruptly influenced three jurymen in that case and was thereby guilty of gross misconduct. The corroborating evidence consisted of statements made by one of those jurymen who died on April 19, 1933. The single justice found that the statements were made by him in good faith, upon his personal knowledge and before the charges against the respondent were filed in court. The respondent duly excepted to the admission of these statements. The evidence tended to show that the statements were made by the deceased juryman (after a promise by the Attorney General of immunity from prosecution for anything he might have done to be disclosed in the hearing) under oath before the commissioner, that they were taken by a stenographer and transcribed, and a properly identified copy was presented. The statements were made on February 9, 1933.

After the trial the single justice filed written findings, rulings and an order for disbarment. The respondent thereupon filed in writing a claim of exceptions to the "findings, rulings and order." The only ruling of law affecting the respondent was that relating to the admission of the statements of the deceased juryman. Whether that ruling was correct is the only question presented. *Keohane, petitioner,* 179 Mass. 69. *Parker* v. *Levin,* 285 Mass. 125, 129.

1. It is contended that the statements of the deceased juryman were not admissible. It may be conceded that in the circumstances here disclosed as to the course of the trial the statements were received not under the common law rules of evidence but by virtue of G. L. (Ter. Ed.) c. 233, § 65. That section is in these words: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." The single question on this branch of the case is whether the statements were admissible under this statute. This statute made a considerable change in the law of evidence. It

requires declarations or statements to be received which under the common law were excluded because obnoxious to the rule against hearsay evidence. It was designed to remedy a defect in the law of evidence as theretofore administered. It ought to be and has been consistently construed liberally to extend rather than to restrict the intended relief and to effectuate its corrective purpose. *Hall* v. *Reinherz*, 192 Mass. 52, 53. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 384, 385. *Tenney* v. *Foss*, 268 Mass. 69, 71. It has not been confined to actions at law or to actions in any constricted sense. It has been held to apply to suits in equity, *Smedley* v. *Johnson*, 196 Mass. 316, 318, to petitions and proceedings in the Land Court, *Murphy* v. *Hanright*, 238 Mass. 200, 206, and to proceedings of various kinds in the Probate Court, *Phillips* v. *Chase*, 201 Mass. 444, 447, *Stitt* v. *Tribe*, 270 Mass. 204, 206. A chief contention of the respondent is that the statute is confined in operation to evidence offered in an "action" and that a disbarment proceeding is not an "action." The word "action" in the governing statute occurs in connection with the words "before the commencement of the action." The main purpose of this clause is to fix a limit of time as to when the declaration must be made in order to be admissible. It does not appear to be designed to be a restrictive classification of the particular civil proceedings in which the declaration may be admissible.

The word "action" is used in the statute in a comprehensive and generic sense as meaning the pursuit of a right or the invocation of a remedy in a court of justice without regard to the form of legal proceedings. *Boston* v. *Turner*, 201 Mass. 190, 196. *Ginzberg* v. *Wyman*, 272 Mass. 499, 501. It is manifest that the word "action" is not used in any narrow sense. As originally enacted in St. 1898, c. 535, the word "suit" was used instead of "action." The latter word was substituted in R. L. c. 175, § 66. This is indication that it was intended to embrace civil proceedings in general without special regard to the form. *Commonwealth* v. *Gallo*, 275 Mass. 320, 335. A dis-

barment proceeding falls within this comprehensive description. The primary purpose of such a proceeding is the preservation of the purity of the courts and the protection of the public from attorneys who disregard their oath of office and have been proved unworthy of trust. An attorney is not merely practising a profession for personal gain; he is an officer of the court. By virtue of its inherent power to control the conduct of its affairs, to maintain its dignity and to enable itself to do justice the court has a summary jurisdiction to inquire into the conduct of its officers and to deal with an attorney found to have committed any evil practice contrary to justice and honesty. A petition for disbarment is frequently filed with allegations of misdoings. A rule to show cause or a summons to answer may be a sufficient commencement of the proceeding. No formal or technical description of his alleged offence is necessary but in some way the charge must be set forth and brought to the knowledge of the respondent. A fair hearing must be held. *Randall, petitioner,* 11 Allen, 473. *Boston Bar Association* v. *Greenhood,* 168 Mass. 169. *Boston Bar Association* v. *Casey,* 211 Mass. 187. *Matter of Sleeper,* 251 Mass. 6. *Matter of Ulmer,* 268 Mass. 373. *Randall* v. *Brigham,* 7 Wall. 523, 540. *Bradley* v. *Fisher,* 13 Wall. 335. *Ex parte Wall,* 107 U. S. 265. If an order of disbarment is made, it is a final judgment and statutes and rules touching that subject are applicable. In *Boston Bar Association* v. *Casey,* 227 Mass. 46, which was a disbarment proceeding, at page 51 it was said, "The final disposition of the case took place automatically under R. L. c. 177, § 1, as amended by St. 1912, c. 190, and Superior Court Rule 23 (1906) on the first Monday of the month first succeeding the entry" of a rescript. Although the enabling statute there referred to authorized such judgments in "civil actions and proceedings" the rule of court referred only to "actions." (See *Gardner* v. *Butler,* 193 Mass. 96.) That decision thus recognized a disbarment proceeding as comprehended within the classification "actions." Disbarment is not an adversary proceeding in the strict sense. There is no party plaintiff with a private interest. *Boston Bar Association*

v. *Casey*, 211 Mass. 187. A disbarment proceeding is an inquest or an inquiry into the conduct of the attorney. It is the pursuit of a right as well as the performance of a duty by or in behalf of the court to purge its officers of an unworthy member. It involves no private interest except that of the attorney. It is the invocation of a remedy to protect the courts and the public from the impositions arising from the presence of an unfit person among trusted officers. It does not afford redress for a private grievance. It is an action undertaken and carried forward solely for the public welfare. It belongs to the class of cases to which a statute designed to relax a rule of evidence thought to be too strict and narrow for ordinary litigation would normally be made applicable. Section 65 is a statute which the courts would naturally adopt by analogy in that class of cases even if less clearly applicable as matter of interpretation. *Strout* v. *United Shoe Machinery Co.* 215 Mass. 116, 119. *Commonwealth* v. *Hassan*, 235 Mass. 26, 31. *Attorney General* v. *Pelletier*, 240 Mass. 264, 306. *Corey* v. *Tuttle*, 249 Mass. 135, 138.

Statutes may be found where a broader word than "action" has been used. There are decisions giving to the word "action" a narrower scope. It is not necessary to review them because we are satisfied from the history, purpose and course of interpretation of the present statute that it applies to proceedings like the present.

The conclusion that the statute rightly interpreted is applicable to a disbarment proceeding is supported precisely by *In re Wilcox*, 90 Kans. 646, and in principle by *O'Brien's Petition*, 79 Conn. 46, and *Dinsmore* v. *Barker*, 61 Utah, 332. See also *Weston* v. *City Council of Charleston*, 2 Pet. 449, 464, where the word "suit" was held to be comprehensive enough to include a petition for a writ of prohibition.

We think also that this point is foreclosed against the respondent by *Pigeon's Case*, 216 Mass. 51. That was a proceeding under the workmen's compensation act. Those proceedings are instituted by filing with the Industrial Accident Board a simple claim for compensation. The Industrial Accident Board is not a court but purely and

solely an administrative tribunal. It is matter of common knowledge that a comparatively small proportion of those claims ever reach the courts. They have few of the characteristics of an action at law. Yet it was held upon full consideration that the statute was applicable to such proceedings. That decision governs the case at bar.

Both on principle and on authority in our opinion the statute is applicable to disbarment proceedings. Whether apart from the statute the evidence might have been rightly received need not be decided.

The case at bar is distinguishable from *Brady* v. *Doherty*, 253 Mass. 518, 524, and *Mahan* v. *Perkins*, 274 Mass. 176, 179, where it was held that the statute was not applicable to declarations made by a testator offered in trials as to the proof of wills. Such declarations were admissible before the enactment of the statute for the restricted purpose of showing his mental condition and feelings and the statute was held not to enlarge the scope of such declarations. Rules as to the admissibility of a decedent's declarations peculiar to the trial of contests over wills had been developed which it was thought that the Legislature did not intend to dislodge or disturb. Those decisions rest upon the law as to proof of certain issues in will cases and not on any definition of the terms of the statute. It is also plainly distinguishable from *Commonwealth* v. *Gallo*, 275 Mass. 320, 335, 336, where it was held that the statute applied not to prosecutions for crime, but to civil procedure only. The reasoning of those decisions has no pertinency to the case at bar.

2. The preliminary findings that the declarations were made in good faith and upon personal knowledge met those conditions of the statute. The conclusions of the single justice in these respects were findings of fact. They are fully supported by evidence. *McSweeney* v. *Edison Electric Illuminating Co.* 228 Mass. 563. The same is true as to the finding that the declarations were made before the commencement of the present proceeding, so far as it is a question of fact. The circumstance that the deceased juryman was a self-confessed taker of a bribe and was

promised immunity from prosecution for his revelations did not render his statements inadmissible. That they were not subject to cross-examination does not affect their admissibility as evidence. The person making the declarations rendered by the statute competent as evidence cannot in the nature of things be subjected to cross-examination. Only the person testifying as to those declarations can be cross-examined with respect to them. There was no error in admission of the declarations. *Hasey* v. *Boston*, 228 Mass. 516. *Ames* v. *New York, New Haven & Hartford Railroad*, 221 Mass. 304.

The statements or declarations come within the scope of the statute as to their nature. They were categorical, detailed and plenary. They amply support the finding of the single justice to the effect that the respondent "corruptly influenced three jurymen who sat in" a specified case tried in the Superior Court "and was thereby guilty of gross misconduct." It is not necessary to recite them at length. They plainly implicated the respondent in the act of influencing the conduct of the three jurymen by the payment of money. They were made under circumstances which rendered them admissible.

3. The respondent contends that the statements admitted in evidence were not made "before the commencement of the action" and hence ought to have been excluded. That contention is based on the theory that the action commenced when the petition for inquiry into the alleged abuses and unprofessional conduct was filed and the commissioner appointed to conduct an inquiry. It has not been argued that the court did not have power to enter an order directing that an inquiry be made into the conduct of attorneys and to appoint commissioners to take evidence, to make recommendations deduced from findings and to present reports to the court. That power can hardly be doubted. A preliminary investigation was essential to enable the court to determine whether proceedings for disbarment against any particular individual were justified. The nature of the petition on which the investigation was ordered shows that a general exploration was

proposed into the conduct of numerous members of the bar engaged in bringing tort actions for personal injuries and property damage. Its aim was to inform the court of existing conditions to the end that it might take such action as it might deem expedient for the public welfare. The appointment of the commissioners and the jurisdiction conferred upon them by the order of appointment import an inquiry searching enough to reveal facts adequate to support proceedings against offenders. An inquiry or an inquest of the nature described is not the institution of proceedings for disbarment. It is wholly antecedent to the institution of such proceedings. No one could predict what facts might be reported by the commissioner or what recommendations he might propose. In such inquiry there were no parties; there was no defendant; there was no plaintiff. After the inquiry was ended and the report filed it was for the court to determine whether notice should issue to the particular attorney to show cause why he should not be disbarred. A preliminary investigation not designed to establish any rights or to end in any judgment or decree is not the same proceeding or action as this disbarment proceeding. All the proceedings taken before the order of notice to the respondent could properly result at most only in the collection of information. It was not until order of notice issued to the respondent that the proceeding or the action against him was instituted. All that preceded that decisive step did not constitute the present action for disbarment within any reasonable conception of the word. That inquiry for the assembling of facts resembled the collection of evidence preceding the bringing of a writ in an action at law. The giving of a notice required by statute has been held not to preclude the admission under the statute of a subsequent declaration provided it was made before suing out the writ. Dickinson v. Boston, 188 Mass. 595, 597. This inquiry also is something like a preliminary examination before a district court without jurisdiction to deal finally with the felony charged. The ultimate proceeding is founded on the indictment by the grand jury if and when

one is returned. See *Hill* v. *Butler County*, 195 Mo. 511. Whether the information collected by the inquiry would result in the formulation of charges or in the making of a recommendation for disbarment could not be predicted but must depend upon the evidence elucidated. In any event proceedings for disbarment would be instituted subsequently to the filing of a report by the commissioner and would be an entirely separate and distinct procedure from the preliminary investigation. *People* v. *Culkin*, 248 N. Y. 465.

It follows from what has been said that the present action or proceeding did not begin when the commissioner began taking evidence touching the conduct of the respondent. That inquiry was still preliminary in nature. Much remained to be done before the situation would be ripe for the institution of disbarment proceedings.

The result is that the declarations or statements of the deceased juryman were made before the commencement of the present action, and were rightly admitted in evidence.

4. The respondent has argued that he has been deprived of practising law by proceedings not complying with due process of law. No request for ruling was presented on this point. We do not think it is open to him on this record. If, however, the point be regarded as open, it is without merit in our opinion. He has been fully heard upon every issue. The procedure has been according to established practice. Painstaking consideration has been given to all his arguments. The conclusion has been reached by legal proceedings established by our jurisprudence regulating the disbarment of unworthy members of the bar, for the protection of the public welfare, for the enforcement of the duty and obligation of the court and for the protection of the rights of the respondent. *Randall, petitioner*, 11 Allen, 473. *Boston Bar Association* v. *Greenhood*, 168 Mass. 169. *Boston Bar Association* v. *Casey*, 211 Mass. 187. *Matter of Sleeper*, 251 Mass. 6. *Matter of Ulmer*, 268 Mass. 373.

*Exceptions overruled.*