## IN THE MATTER OF LOWELL A. MAYBERRY.

Suffolk.    March 5, 1936. — July 8, 1936.

Present: CROSBY, FIELD, DONAHUE, & QUA, JJ.

*Attorney at Law. Jurisdiction. Practice, Civil,* Disbarment proceedings, Exceptions, Judgment, Rehearing, Waiver. *Supreme Judicial Court,* Jurisdiction. *Evidence,* Presumptions and burden of proof.

The question, whether the Supreme Judicial Court sitting for a county had jurisdiction to revoke an order for judgment, might be raised for the first time before the full court.

Under Rule 8 of Rules of the Supreme Judicial Court for the Regulation of Practice at Common Law (1926), an order for judgment did not of itself cause disbarment proceedings to go to judgment where there had been no motion for judgment and no general or special order to that effect.

Until judgment had been entered upon an order by a single justice of this court for judgment dismissing proceedings for disbarment of an attorney at law, the order might be revoked and the charges retried *de novo* upon evidence previously introduced and further evidence later produced.

Even if an order by a single justice of this court for judgment dismissing proceedings for disbarment of an attorney at law was a final judgment, a subsequent order, purporting to vacate the first order and ordering a trial of the charges against him *de novo* upon the production of further evidence, was the commencement of new proceedings against him, which was within the jurisdiction of the court; the existence of a former judgment could not affect the court's jurisdiction to hear the second proceeding: at most it would be an affirmative defence in the nature of *res judicata* and, not having been raised at the second hearing on the merits, could not be raised for the first time before the full court.

An investigation and findings of fact by a commissioner appointed by the court which were the basis of charges against an attorney at law upon which an order of notice was issued directing him to show cause why he should not be disbarred were in themselves no part of the judicial proceedings following the order of notice; irregularities on the part of the commissioner did not affect the validity of such judicial proceedings.

Evidence that an attorney at law was counsel in seven unrelated cases with a different client and different associate counsel in each case, that there was bribery or attempted bribery of jurors in every such case which sought a verdict for the party represented by the attorney, that such bribery was by one who had been employed on various

occasions by the attorney as an investigator or by an acquaintance of the employee, and that none of the clients nor associate counsel participated in the bribery or attempted bribery, warranted an inference that unlawful influencing or attempting to influence jurors was by the attorney's procurement, although there was no direct evidence of his participation therein.

Cause for disbarment of an attorney may be proved by a fair preponderance of the evidence as in other civil cases, and need not be proved beyond a reasonable doubt; there is no intermediate standard of proof, such as that the evidence must be "clear and convincing" or "not of doubtful character" or from witnesses "whose character entitles them to belief."

In proceedings for disbarment of an attorney, there is no presumption of innocence other than that in contemplation of law the respondent began the trial as an innocent man and would remain such unless the charges were proved.

In a proceeding for disbarment for procuring bribery or attempted bribery of jurors, the respondent was not harmed by findings of a single justice of this court on evidence before him that many jurors were of low grade; nor by evidence that a bribing employee of the respondent had been convicted, it not appearing that the single justice used that fact as affirmative evidence against the respondent; nor by the fact that there was a variance in details between the report of a commissioner, which was the basis of the charges, and the judge's findings, the trial having been plenary on all matters involved, with full knowledge of the charges.

PROCEEDINGS FOR DISBARMENT, begun by order of notice issued upon the filing of a fourteenth report by a commissioner appointed pursuant to a petition filed in the Supreme Judicial Court for the county of Suffolk on December 1, 1931.

There were proceedings before *Lummus*, J., described in the opinion. The evidence at the final hearings was fully reported and occupied, with copies of exhibits, four hundred thirty-five pages of the printed record.

At the close of the evidence, the respondent requested the following rulings, among others:

"7. As matter of law, in an action of this character the respondent is presumed to be innocent of the charges preferred and to have performed his duty in accordance with his oath of office.

"8. As matter of law, if upon all the evidence the Court has a reasonable doubt as to the guilt of the respondent, the proceeding should be dismissed.

"9. As matter of law, a conflict in the evidence, in a proceeding of this kind, which leaves the decision of the issue doubtful, should be resolved in favor of the respondent.

"10. As matter of law, in a proceeding of this kind involving so serious a consequence as deprivation of a man's vocation, proof of conduct justifying such consequence should be clear and convincing, and not of a doubtful character, and in the absence of such proof the proceeding should be dismissed.

"11. As matter of law, legal evidence from the mouths of witnesses whose character entitles them to belief should be required to deprive a duly admitted attorney of the vitally important and valuable right to practice his profession and to impose upon him the stigma of disbarment."

The rulings of the single justice upon these requests were as follows in substance: "I refuse to give the seventh request in terms, but rule that the charges are not evidence against the respondent, and that in the absence of a finding of his misconduct, supported by and based upon evidence, the respondent would be entitled to have the proceedings against him dismissed on the merits. Such a finding is filed with this ruling.

"The eighth, ninth and tenth requests in substance would require proof of misconduct beyond any reasonable doubt. The eleventh request would require legal evidence 'from the mouths of witnesses whose character entitles them to belief.' These requests are denied. This is not a criminal case . . . but a proceeding to determine whether the conduct of the respondent is such that he should continue to practice as an attorney at law under the implied representation that he is an honorable practitioner. . . . All the evidence must be weighed, whether its source is pure or impure. I rule that, to justify disbarment, misconduct need not be proved, as in a criminal case, beyond reasonable doubt. I rule, however, that, as in other civil cases, it must be proved by the preponderance of the evidence. . . . There is no intermediate rule or standard. . . . In making my findings I have applied the rule just stated, which has been held applicable to disbarment proceedings. . . ."

By order of the single justice, an order was entered removing the respondent from the office of attorney at law. The respondent alleged exceptions.

*S. Hoar, G. L. Mayberry, & H. Albers,* for the respondent, submitted a brief.

*C. C. Cabot,* (*J. A. McArdle* with him,) appointed by the court to conduct the proceedings.

Qua, J. This proceeding, in so far as it directly affects the present respondent, originated in the "Fourteenth Report" of a special commissioner appointed by this court upon a petition filed on behalf of a committee of citizens of the Commonwealth. The nature of the petition and the action of the court upon it are sufficiently set forth in *Matter of Keenan,* 287 Mass. 577, 578. See also pages 585–587. In said fourteenth report the commissioner found that the respondent conspired with one Donnelly to influence improperly jurors in certain named cases and recommended that an order of notice be issued by the court to the respondent requiring him to show cause why he should not be disbarred. Before the trial the commissioner filed a "Supplemental Fourteenth Report" containing further details as to the cases and the names of the persons involved.

In September, 1933, a trial was had on those reports before a single justice of this court, who on October 5, 1933, entered an "Order for Judgment" reciting that cause for disbarment or discipline was not established and ordering that the proceeding against the respondent "be, and the same is hereby dismissed." Thereafter on October 27, 1933, the commissioner filed a "Second Supplementary Report" alleging that subsequent to the hearing certain testimony not theretofore available had been produced before him which in his judgment was so material to the inquiry that he deemed it his duty to inform the court thereof, so that the court might consider "whether the inquiry should be reopened for further information in the premises." A transcript of the testimony referred to in this report was filed with the clerk. On October 2, 1934, the commissioner filed a "Third Supplementary

Report" setting forth that Donnelly, whom the respondent admitted having employed at various times, but who could not be found to testify at the first hearing, was now in prison and available, and that certain jurors alleged to have been corrupted could identify him in court, and praying for an order "reopening the hearing . . . or such other order as the court shall deem expedient in the interests of the public welfare." Thereupon, on December 13, 1934, after a hearing, the single justice entered an "Order Vacating Order for Judgment" wherein "the Order for Judgment . . . entered October 5, 1933," was vacated and said fourteenth report and the three supplementary reports were "assigned for hearing *de novo.*" The second trial before the single justice resulted in an order that judgment be entered removing the respondent from the office of attorney at law.

1. The respondent raises at the outset a question of jurisdiction. No such issue appears to have been suggested at the trial, but nevertheless it is fundamental in its bearing upon the power of the court to proceed with the cause and it may be urged here for the first time. *Cheney* v. *Boston & Maine Railroad,* 227 Mass. 336. *A. Sandler Co.* v. *Portland Shoe Manuf. Co.* 291 Mass. 326. The contention is that the order of October 5, 1933, dismissing the proceeding against the respondent was in itself a final judgment in his favor (see *Matter of Keenan,* 287 Mass. 577, 582) which exhausted the jurisdiction of the court, and that all that followed, including the "Order Vacating Order for Judgment" of December 13, 1934, and the second trial, was of no effect.

This contention cannot prevail. In *Boston Bar Association* v. *Casey,* 204 Mass. 331, at page 335, this court held that an order for disbarment couched in equally strong terms of present finality was not a judgment which ended the jurisdiction of the court under what is now G. L. (Ter. Ed.) c. 235, § 1, but that it was only an order for judgment. In this court proceedings at law, even though ripe for judgment, do not go to judgment automatically at stated intervals. A motion for judgment or a general or special

order is necessary. G. L. (Ter. Ed.) c. 235, § 1. See Rule 8 of the Rules of the Supreme Judicial Court for the Regulation of Practice at Common Law (1926; 252 Mass. 591); *Bailey* v. *Edmundson,* 168 Mass. 297, 299. See, however, as to judgments by default, G. L. (Ter. Ed.) c. 231, § 57. Hence, if this case did not go to judgment on October 5, 1933, there is nothing to show that it went to judgment on any subsequent date, and the later action of the court in vacating the order of October 5 and in ordering a hearing *de novo* was a step in the further progress of the case which the court had power to take and as to which no error is shown. *McKinley* v. *Warren,* 218 Mass. 310. *Kolda* v. *National-Ben Franklin Fire Ins. Co.* 290 Mass. 182. We do not decide whether in a case of this kind anyone opposed to the respondent had on October 5, 1933, any right to file exceptions under G. L. (Ter. Ed.) c. 231, § 113, which also prevented the case from going to judgment in favor of the respondent on that day. See *Everett-Morgan Co.* v. *Boyajian Pharmacy,* 244 Mass. 460; *Grievance Committee* v. *Broder,* 112 Conn. 269, 273; *Matter of Dolphin,* 240 N. Y. 89; *Kline* v. *Shapley,* 232 Mass. 500, 503.

But we need not rest this decision upon technical niceties of practice, for even if the order of October 5, 1933, had been a final judgment, it would not follow in a case of this kind that the court was without jurisdiction to entertain the later proceedings. "By virtue of its inherent power to control the conduct of its affairs, to maintain its dignity and to enable itself to do justice the court has a summary jurisdiction to inquire into the conduct of its officers and to deal with an attorney found to have committed any evil practice contrary to justice and honesty." *Matter of Keenan,* 287 Mass. 577, 582, and cases cited. The court may exercise this jurisdiction without compliance with the requirements of formal procedure which must be observed in ordinary litigation. No complaint, indictment or information and no service of process are necessary. *Randall, petitioner,* 11 Allen, 473. "It is enough if in some proper way the attorney is reasonably and definitely informed of the matters alleged against him, and given an

opportunity of being heard in answer to them." *Boston Bar Association* v. *Greenhood,* 168 Mass. 169, 184. *Boston Bar Association* v. *Scott,* 209 Mass. 200, 203. *Matter of Allin,* 224 Mass. 9, 11. *Matter of Sleeper,* 251 Mass. 6, 21. *Matter of Ulmer,* 268 Mass. 373, 391. If, as the respondent contends, the order of October 5 was a final judgment in his favor ending the original proceeding against him, then the order of December 13 purporting to vacate the order of October 5 and assigning the fourteenth report and the three supplementary reports for hearing *de novo* was the commencement of a new proceeding against the respondent. That proceeding was within the general jurisdiction of the court. It complied with all the requirements of law applicable to such proceedings in that the respondent had ample notice, knew what the charges were, had a full and complete opportunity to defend himself and in fact did defend himself throughout a long trial without, so far as appears, making any objection to the jurisdiction and without any reference to any judgment in the original proceeding as a defence. The existence of a former judgment in favor of the respondent could not affect the jurisdiction of the court to hear the second proceeding. At most it could be no more than an affirmative defence in the nature of *res judicata* to be seasonably set up and proved by the respondent. It is too late now to assert that defence for the first time. See *Randall, petitioner,* 11 Allen, 473, 481; *Maker* v. *Bouthier,* 242 Mass. 20; *Moll* v. *Wakefield,* 274 Mass. 505.

2. Apparently the respondent asks us to hold that the proceedings against him have been so conducted that he has been deprived of due process of law. This contention is based upon the manner in which the preliminary investigation and the proceedings before the commissioner were conducted and upon the fact that the commissioner in certain of his reports made findings of fact against the respondent without, it is said, an adequate opportunity for the respondent to be heard. But the proceeding against this respondent did not begin with the filing of the petition of the committee of citizens or with the appointment of the

commissioner or with the commissioner's investigation of the respondent. It began with the filing of the commissioner's reports against the respondent and action by the court thereon. This was decided in *Matter of Keenan*, 287 Mass. 577, 586. What had gone before was no part whatever of the proceeding against the respondent. No exception appears to have been directed specifically to the present contention. It is evident from the record that the respondent was fully and fairly tried upon issues of which he was well informed and with full opportunity to present his defence. All that was said of this same contention in *Matter of Keenan*, 287 Mass. 577, 587, is equally applicable here.

3. The respondent excepts to the refusal of the single justice to rule, as to each of the seven cases in connection with which he was accused, that there was no sufficient evidence to warrant a finding that he had been guilty of improper conduct. The evidence is very voluminous. We cannot attempt to state even the substance of it within the proper limits of an opinion. We must content ourselves with a brief summary of certain facts as to which there was direct evidence and other facts which plainly in our opinion could have been found by reasonable and proper inference from evidence in the record.

The respondent was admitted to the bar in 1912. He had a wide experience as a practitioner, having been, particularly in the earlier years, engaged to a large extent in the trial of jury and jury waived cases. John J. Donnelly was an "investigator." He was acquainted with John C. Nolan, Hugh Mullen, Charles Murtagh and George F. Mahoney. It could have been found that Donnelly was a man of small means and that it took all of his earnings to support his two families. Donnelly occasionally called at the respondent's office. The respondent sometimes employed him for work in connection with the respondent's cases and with the exception of one small matter always paid him in cash.

In the case of G. M. Bryne Co. *v.* Barnstable the respondent represented the plaintiff. On October 30, 1930,

there was a verdict for the plaintiff for $21,414, of which the plaintiff by agreement of the parties later remitted $6,864.64. During the trial two men approached one of the jurors and asked him if he wanted to make $50 "easy." Upon his refusal they left $5 on the table. After the verdict this juror met one of the men near the juror's house. The man asked how things were going, and the juror said, "They win." "They" could have been found to refer to the G. M. Bryne Company, and the remark could, we think, in connection with all the other evidence, have been found to indicate that the juror understood that the men had approached him in reference to a verdict favorable to that company rather than to the town of Barnstable.

In the case of Pierce v. Commonwealth the respondent represented the petitioners. On December 22, 1930, there was a verdict for the petitioners for $20,350.07. During the trial a man came to the house of a juror and asked him which way the case was going and "if he would like a Christmas present." Just before the verdict in the same case two men, one of whom was Nolan, came to the house of another juror, "wanted him to bring in a verdict . . . in favor of Pierce" for a named amount and promised to see that he got a Christmas present of not less than $100. The juror sold these men two tickets to the Irish sweepstakes. One or both of the men gave the juror as the names and address of the persons who were to hold the tickets "Helen Donley" and "Francis Donley" both of "710 Gordon Street, Boston." One Helen Hagerty lived at 83 Gordon Street, Boston, which was the address of one of the homes maintained by John J. Donnelly, where she was known as Mrs. Donnelly. Helen Frances Donnelly was their child and lived at the same address. There was no number 710 on the street.

In the cases of Fletcher v. Commonwealth and Blanchard v. Commonwealth, which were tried together, the respondent represented the petitioners. On June 24, 1931, there were verdicts for the petitioners aggregating $18,649. Just before the cases were given to the jury Nolan came to the house of a juror by the name of Polack and after some

negotiation paid Polack $100 to "hold out" for large verdicts. Donnelly took part in the negotiations. He went to his bank and when he came back he gave Nolan two $50 bills with which to pay Polack. Nolan and Mullen called upon another juror in the same cases by the name of Leonard and offered him a total of $100. Leonard refused to take money, but said, "if you want to do me a favor afterwards you can do it." Donnelly suggested the bribing of these two jurymen to Nolan and Mullen. On June 12, $200 was deposited to Donnelly's credit in his bank account and on June 17 an additional $50 was deposited. These two amounts would be exactly enough to pay the jurors Polack and Leonard $100 each and in addition to pay Nolan and Mullen $25 each if they had succeeded in bribing both jurors instead of one only. As it was, Donnelly paid Nolan and Mullen $12.50 each. The entire balance of Donnelly's account was withdrawn two days before the verdicts.

In the case of Kinchla v. New York Central Railroad the respondent represented the defendant. On September 27, 1932, there was a verdict for the defendant. Before the verdict Murtagh, who gave his name as Davis, and another unidentified man agreed with a juror who was sitting in the case to pay him $75 for a verdict for the defendant or a disagreement. It was arranged that after the verdict the juror should call up a telephone number which was the number of the telephone in the house where Murtagh boarded. Donnelly called upon Murtagh there several times that fall. Donnelly was his only caller. They also met in the office of a lawyer, not the respondent. After the verdict the unidentified man paid the juror the $75.

In the case of Wilcox v. Smyth the respondent represented the plaintiff. On October 28, 1932, there was a verdict for the plaintiff for $8,000. Shortly before the verdict Donnelly and Mahoney promised a juror $100 if he would bring in a verdict for the plaintiff for $11,000. After the verdict Donnelly paid the juror $25 instead of the $100 promised, saying that they could not get the larger sum on account of the small amount of the verdict.

In the case of Downs v. Paine Furniture Co. the respondent represented the plaintiff. On October 31, 1932, there was a verdict for the plaintiff for ,$5,278.64. While the case was on trial Donnelly bribed a juror for the sum of $50 to obtain a verdict of $5,000 for the plaintiff. Donnelly paid this juror the $50 and also paid $10 to another juror who had assisted him in making the necessary contact.

In all these cases the respondent represented different clients. Counsel associated with him or assisting him were all different, except that his father, also a lawyer, had entered an appearance in three of the cases. There was direct evidence, except as to the respondent's father, that none of these parties or counsel was aware of any solicitation of jurors. It could have been found that at the times of the trials the respondent's father was an elderly man in impaired health and that he took little or no active part in the management of the cases and that it was highly improbable that he took any part in the solicitation of jurors.

There was also evidence in conflict with much of that hereinbefore outlined. There were categorical denials by the respondent that he had had any part in tampering with jurors or in employing Donnelly or anyone else to do so and that he had given any money to Donnelly for that purpose. There was also much evidence tending to show that some at least of the cases were of such character that there was no probable necessity for bribing jurors in order to obtain favorable verdicts.

The single justice found that "in each of said cases some person or persons attempted to bribe a juror or jurors to cause to be returned a verdict favorable to the side of the case represented by the respondent as counsel. In a majority of the cases the attempt was successful, and bribery was accomplished. I find that none of the clients or associate counsel of the respondent in any of said cases was concerned in the bribery or attempted bribery. The clients of the respondent in the several cases were all different, and so were his associate counsel. No one concerned in said cases had an interest in the success of the respondent in more than one of them, except the respondent himself.

He alone had an interest in winning all of them." The single justice drew the inference "from the evidence and subsidiary facts as a whole, that the respondent is guilty of bribing or attempting to bribe, through his agent or agents, a juror or jurors in each of said cases . . . ."

As this is a proceeding at common law and not in equity, the question for us to decide is whether the general or special findings made "are warranted by direct testimony or as inferences from all the evidence" or whether they "can be sustained on any reasonable view of the case as presented to the trial court." *Matter of Sleeper*, 251 Mass. 6, 12. There was no direct evidence of the respondent's participation in unlawful practices. Nevertheless it was for the single justice to weigh the credibility of witnesses and to determine the probabilities. The bribery or attempted bribery of jurors in seven cases (two of which were tried together) out of a total of not over nineteen jury cases tried by the respondent in a period of approximately two years, always to vote for the party represented by the respondent, the presence of the respondent as the common element in all these cases, the activities of Donnelly and of persons with whom he was shown to be acquainted, the improbability that there was any independent motive on Donnelly's part for such activities or for the expenditure of money for such purposes, the probability that he was obtaining the money from some outside source and his known connection with the respondent constitute, in view of all the evidence, an accumulation of circumstances sufficient in law to support the conclusion of the single justice. He could reject as improbable the contention of the respondent that the case against the respondent, supported as it was by the testimony or transcripts of the testimony of eight jurors alleged to have been approached, four of whom testified that they had been bribed, was wholly or partly the result of a conspiracy against him on the part of persons employed in the investigation.

4. This proceeding is civil and not criminal in character. *Boston Bar Association v. Greenhood*, 168 Mass. 169, 183. *Matter of Ulmer*, 268 Mass. 373, 392. In the case last cited,

at page 400, it was held that the rules of evidence applicable to civil trials were rightly enforced. In *Matter of Keenan*, 287 Mass. 577, it was held that G. L. (Ter. Ed.) c. 233, § 65, relative to the admission in evidence of declarations of deceased persons applies in a case of this kind, although it does not apply to criminal cases. It follows that cause for disbarment may be established by a fair preponderance of the evidence as in other civil causes and that proof beyond reasonable doubt as in criminal cases is not required. There is authority to the contrary in some jurisdictions. But there is also much authority supporting our present conclusion, which is so plainly foreshadowed by our own decisions. *Matter of Herrmann*, 175 App. Div. (N. Y.) 310. *Matter of Steinfeld*, 204 App. Div. (N. Y.) 508, 513. *Matter of Farrell*, 237 App. Div. (N. Y.) 678, 685. *In re Darrow & Talbot*, 175 Ind. 44, 56. *Maloney* v. *State*, 182 Ark. 510, 515. *Gould* v. *State*, 99 Fla. 662, 665. *In re Hanson*, 48 Utah, 163, 167. *In re Dunham*, 124 Wash. 418.

5. Nor do we think that there is in this Commonwealth any rule of law establishing for such cases an intermediate standard of proof, such as that the evidence must be "clear and convincing" or "not of doubtful character." Such midway expressions may have some place in emphasizing the care with which the trier of fact should approach the decision of an issue so important to the respondent as the loss of his profession. This is substantially in accord with what this court said as to an issue of fraud in *Hatch* v. *Bayley*, 12 Cush. 27, 30, cited by the respondent. *Kline* v. *Baker*, 106 Mass. 61, 66. But such terms are too vague to serve generally as a practical guide in the trial of cases. See cases last cited above and also *Cohasset* v. *Moors*, 204 Mass. 173, 177; *Richardson* v. *Travelers Fire Ins. Co.* 288 Mass. 391; *Livanovitch* v. *Livanovitch*, 99 Vt. 327, 328; Wigmore on Evidence (2d ed.) § 2498. There may be reasons for a different rule where a party seeks to alter or destroy a formal instrument duly executed by the parties for the purpose of establishing their rights, as in *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290, 317. See *Kidder* v. *Greenman*, 283 Mass. 601.

6. There was no presumption of innocence other than that in contemplation of law the respondent began the trial as an innocent man and would remain such unless charges were proved. This is as far as the presumption goes even in criminal cases. *Commonwealth* v. *De Francesco*, 248 Mass. 9, 13. *Commonwealth* v. *Madeiros*, 255 Mass. 304, 315. The single justice so ruled.

7. We are unable to see that the respondent has been in any way prejudiced by the findings of the single justice relative to the presence on juries of a considerable number of jurors of low grade in respect to intelligence and character. Those findings are based on evidence.

8. The record fails to show that the single justice used the fact of Donnelly's conviction as affirmative evidence against the respondent. Such misapplication of the evidence is not to be presumed.

9. In a proceeding of this kind, where there has been a plenary hearing on all matters involved, with full knowledge of the charges, variances in details between the statements in the commissioner's reports and the findings of the single justice are immaterial. *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 183. *Boston Bar Association* v. *Casey*, 196 Mass. 100, 111.

10. The single justice rightly declined to rule that as matter of law evidence should be required from witnesses "whose character entitles them to belief." Determination of the character of a witness is not a prerequisite to belief in his testimony.

We need not discuss separately each exception. We have carefully examined all questions presented in the light of the entire record. We find no error.

*Exceptions overruled.*