245 S.W.2d 844 (1952)
BURTON
v.
MOULDER.
No. 42456.
Supreme Court of Missouri, Division No. 1.
January 14, 1952.
Rehearing Denied February 11, 1952.
Alfred H. Osborne, and Robert B. Sympson, Kansas City, for appellant.
Shughart & Thomson, Harry P. Thomson, Jr., Frank J. Stark and John M. Kilroy, all of Kansas City, for repondent.
VAN OSDOL, Commissioner.
In this action for personal injuries a jury returned a verdict for plaintiff for $12,500; but the trial court sustained defendant's after-trial motions, and rendered judgment for defendant in accordance with defendant's former motion for a directed verdict and, in the alternative, granted a new trial. Plaintiff has appealed.
Plaintiff's claim arose out of an automobile collision in Kansas. Upon this appeal, we have the primary questionwas plaintiff, in the circumstances, contributorily negligent as a matter of law?
The automobile of plaintiff and that of defendant collided at about 7:40 o'clock the morning of March 23, 1948, at the intersection of White Eagle Road and Chrysler Road in the Fairfax District of Kansas *845 City, Kansas. Plaintiff was traveling east in his 1941 Ford on White Eagle Road; and defendant was traveling north in his 1937 Plymouth on Chrysler Road. According to the testimony of plaintiff, the collision occurred on the north side of White Eagle Road, and when the front end of plaintiff's car was three or four feet across the east line of Chrysler.
White Eagle and Chrysler Roads intersect at an approximate right angle. Both of the highways are paved, the pavements being twenty-four feet in width. At the time, a "stop" sign was located on the south side of White Eagle Road at a point twenty-five feet west of the west line of Chrysler, and a "slow" sign was situate on the east side of Chrysler at a point 320 feet south of the south line of White Eagle Road.
Plaintiff testified that, as he approached the intersection from the west, he stopped near the stop sign located twenty-five feet west of Chrysler. "I was somewhere between the west edge of Chrysler Road and the stop sign. I don't know just where I stopped in there. * * * Maybe the back end of my car was at the stop sign, maybe the center of it was." Just before or when his car came to a standstill, plaintiff looked northwardly and then looked southwardly and saw defendant's vehicle approaching. Plaintiff stated defendant's car was moving at fifty miles per hour and was 400 to 600 feet south of the intersection.
Again plaintiff testified, "I got my car in motion, being he was down there, by that time, maybe 300 or 400 feet, I don't know just how far he was, maybe 250, but he was anyways * * * he was down about the slow sign, is where he was, the last time I looked. * * * Whatever that slow sign measures, that is about where he was * * *. I started on across the intersection at, of course, a slow rate of speed, from a standstill. * * * I was looking to the east * * *." Some pedestrians were "walking around the intersection * * * there was a car coming from the east headed west on * * * White Eagle Road." Plaintiff was watching to see "whether this car was going to make a left-hand turn or right-hand turn * * * I saw he was going to make a right-hand turn onto Chrysler Road and about the time I saw that, why, I got hit."
As stated, plaintiff testified he had stopped at the stop sign. His witness, Husong, said he was of the opinion that plaintiff stopped; at least he did everything but come to a complete stop. The witness, Husong, further testified defendant's automobile was moving 55 to 60 miles per hourit "had slackened its speed but very little." Plaintiff testified he moved 40 or 45 feet (from the point where he had stopped) to the point of collision. He was moving 10 or 15 miles per hour when the cars collided. His witness, Caldwell, testified that, having proceeded from a standstill and when plaintiff was moving at 3 miles per hour, plaintiff could have stopped in a little less than six feet; at 5 miles per hour, in about nine feet; and at 7 miles, in a little over thirteen feet.
Plaintiff said he looked northwardly, and then to the southward, and saw defendant's car approaching. "I had plenty of time to get across this intersection, I thought." He then looked eastwardly and started across; he pursued a "straight course," gradually increasing his speed (to 10 or 15 miles an hour); he did not again look southwardly until an instant before the collision. Just before the collision defendant swerved his Plymouth slightly to the right. The left front end of defendant's Plymouth struck the right front end of plaintiff's Ford.
It was daylight at 7:40 o'clock in the morning of March 23d. The weather was clear and the pavements were dry. At the time, there were no buildings or other objects which in anyway obstructed a view across the area southwest of the intersection. The terrain around the intersection is level. Plaintiff was quite familiar with the intersection. He had been over it "practically every morning." An eastbound traveler on White Eagle Road, while moving the last 200 feet in approaching the intersection at Chrysler Road, had an unobstructed view down Chrysler to the southward for a distance of over a quarter of a mile.
In reviewing this cause we are ignoring the whole of the testimony of plaintiff's *846 witnesses Everage and Jones. We think this is a case wherein justice requires us to take judicial notice of the records in the cases of Osborne v. Purdome (Sympson v. Purdome and Cabbell v. Purdome), Mo.Sup., 244 S.W.2d 1005.
The fact that plaintiff in approaching Chrysler Road was confronted by a stop sign is to be considered in determining his contributory negligence, whether or not the fact would be controlling. Keir v. Trager, 134 Kan. 505, 7 P.2d 49, 81 A.L.R. 181. The defendant, in moving north on Chrysler, was approaching from plaintiff's right. This circumstance, and the stop sign, should have alerted plaintiff to a realization that defendant in approaching might be entitled to priority of passage across the intersection. Hughes v. Hudson-Brace Motor Co., 111 Kan. 397, 207 P. 795; Koger v. Keller, 120 Kan. 196, 243 P. 294; Keir v. Trager, supra. There were other circumstances observed by plaintiff, according to his testimony. They were the circumstances of a third vehicle coming from the east on White Eagle Road in the circumstance of the presence of pedestrians somewhere on White Eagle Road in or near the intersection. The circumstances demanded of plaintiff commensurate precautions in an exercise of due care to protect himself from harm. The circumstances called for a reasonably careful estimate of the entire situation, including the position and progress of defendant's vehicle, before plaintiff, who was in a position of safety, moved out into the pathway of defendant's approaching car.
Whether plaintiff, approaching the intersection, could safely pass into the intersection and across the pathway of defendant's car in large measure depended upon how far defendant's vehicle was from the intersection and the rate of speed at which it was approaching. The fact that a defendant, because of a rule of statute or ordinance or practice "concerning the right of way, may be a favored traveler does not in all circumstances imply that a plaintiff is not justified in attempting to cross an intersection in front of a defendant's approaching vehicle. For example, plaintiff in the instant case was not obliged to await the passing of every automobile approaching from his right which might bysome unexpected burst of speed beat him to the point where their paths might cross. Hughes v. Hudson-Brace Motor Co., supra; Spohn v. Southern Kansas Stage Lines Co., 142 Kan. 595, 50 P.2d 1001.
However, a plaintiff is not to be considered to have fulfilled his duty to exercise due care for his own safety when, in passing into and attempting to cross an intersection in front of an approaching vehicle, he merely looks, and, having seen the approaching vehicle, thinks he has ample time to cross its pathway in safety. Not only should he look and see what he can see, but he should look and see carefully. He has the duty of making a reasonably careful observation of approaching traffic. He should not only look and see what is observable, but he should exercise due diligence in estimating the distance an approaching vehicle is away and the speed at which it is moving. Hughes v. Hudson-Brace Motor Co., supra; Ferguson v. Lang, 126 Kan. 273, 268 P. 117, 63 A.L.R. 1423; Antrim v. Speer, 133 Kan. 297, 299 P. 643; Cruse v. Dole, 155 Kan. 292, 124 P.2d 470; Orr v. Hensy, 158 Kan. 303, 147 P.2d 749; Ray v. Allen, 159 Kan. 167, 152 P.2d 851.
In the case of Hughes v. Hudson-Brace Motor Co., supra, cited by plaintiff-appellant, plaintiff's negligence was held to be a jury question. Plaintiff Hughes was moving fifteen miles per hour. He saw defendants' car when it was still a block away. A witness estimated the speed of defendants" car at sixty-five miles per hour. When plaintiff Hughes was halfway across the intersection, he again looked for defendants' car. It was then too late for plaintiff to prevent a collision. The evidence warranted a finding that defendants' vehicle, driven by defendant Tanner, was moving so rapidly that plaintiff Hughes in the exercise of due diligence in that regard underestimated its speed, and reasonably believed he had ample time to pass over the intersection ahead of defendants' car until it was too late for him to avoid a collision. Again, in the case of Spohn v. Southern Kansas Stage Lines Co., supra, there was evidence supporting the conclusions that *847 defendant's bus was moving at a high rate of speed, and that plaintiff, when he looked 300 feet down Sixth Street to the eastward, could not have then seen the approaching bus. In Scheve v. Heiman, 142 Kan. 370, 47 P.2d 70, the question of the plaintiff's contributory negligence was for the jury. The evidence in that case justified a finding that plaintiff Scheve had moved into the intersection while defendant Heiman was still some distance away. Plaintiff Scheve could have reasonably believed he could safely go across the intersection; and, had he been able to continue at the same speed, he would have passed safely over the intersection. However, having entered the intersection, he was obliged to slow down because of two girls there crossing the street. Continuing across the intersection, plaintiff had a right to assume that defendant Heiman would not exceed the speed at which plaintiff had reason to anticipate defendant would approach and cross the intersection. Since plaintiff Scheve had reasonable grounds for the belief he could safely pass first over the intersection, he, having entered the intersection, had a right to suppose that defendant Heiman would so operate his automobile that, if traffic conditions required plaintiff to slow down, defendant could avoid injury either to other users of the highway or to pedestrians. In Koger v. Keller, supra, plaintiff, a police officer, was operating his motorcycle in circumstances requiring him to move at all practical speed. Moving westwardly and arriving at an intersection, he first looked north and then looked south. Had he looked south first he would have seen defendant's motor truck in time to have avoided the collision. It should not be said that, as a matter of law, his choice of views in the circumstances made him guilty of contributory negligence.
In the instant case, plaintiff, as he said, had stopped. He was in a position of safety west of White Eagle Road. He had time and opportunity to make a careful survey of all traffic approaching the intersection. But he apparently made no real attempt to ascertain the distance defendant's vehicle was away when he looked southwardly down Chrysler Road, saw defendant's car, and moved out into its pathway. In his testimony, plaintiff variously estimated such distance as 320 to 600 feet. Once in his testimony, he equivocally stated the distance was but 250 feet. If defendant moved from a point even with the slow sign (320 feet south of the intersection) to the point of collision at a speed of fifty miles per hour, defendant traveled the distance in approximately four seconds. If plaintiff moved forty-five feet from a standstill and had attained a speed of fifteen miles per hour when the vehicles collided, plaintiff traveled the distance, forty-five feet, in approximately four seconds.
The conclusion is inescapable that plaintiff moved into the intersection without having any real idea of the position of defendant's approaching vehicle. Although he looked, he looked negligently. Having moved forward, he did not again look to his right until an instant before the vehicles collided, although he had theretofore seen defendant's vehicle approaching rapidly, and of course the while should have realized defendant's vehicle might still be rapidly approaching the intersection. As plaintiff moved forward, he could have again looked to his right, and could have seen that he had originally miscalculated defendant's position or speed. Having moved forward and having attained the speed of three, five or seven miles per hour, a mere glance to his right would have disclosed his danger. Even then plaintiff could have stopped or slackened speed or turned to his left and averted the casualty. Plaintiff's conduct almost amounted to complete indifference to danger. Being in a position to pass first into the intersection, plaintiff, without due regard for the position and speed of defendant's vehicle, took a chance on beating defendant's vehicle across the intersection.
We believe reasonable minds would agree that the conduct of plaintiff fell below the standard to which he should have conformed to protect himself from injury. Ferguson v. Lang, supra; Antrim v. Speer, supra; Cruse v. Dole, supra; Ray v. Allen, supra. See also and compare Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495;
*848 Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626.
The judgment should be affirmed. It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All of the Judges concur.