84 So.2d 700 (1956)
Application of Carlos E. HARPER to Withdraw and Separate Himself from the Practice of Law and to Withdraw from the Florida Bar.
Supreme Court of Florida. En Banc.
January 11, 1956.
*701 DREW, Chief Justice.
Carlos E. Harper is an attorney at law, duly admitted and authorized to practice law in the State of Florida and a member of The Florida Bar. With the consent of the Board of Governors of The Florida Bar, he has filed in this Court a petition in which he alleges that there are three charges of professional misconduct presently pending before the Board of Governors, which proceedings are in progress under the applicable provisions of the integration rule; that he does not desire to present further defenses against said charges but wishes to withdraw and separate himself from the practice of law henceforth. He prays this Court to enter an order striking his name from the rolls of The Florida Bar and withdrawing from him the privilege of practicing law without leave for reinstatement.
The Florida Bar has responded to the petition. It admits that it was filed with its consent and that such charges are pending against the petitioner. It is averred that the Grievance Committee of the Eighth Judicial Circuit of Florida has exhaustively investigated the charges against petitioner and, based upon such investigation, has arrived at the conclusion that there is reasonable and probable cause shown that petitioner had been guilty of professional misconduct, and so reported to the Board of Governors of The Florida Bar. It is further averred that after consideration, and pursuant to notice to the petitioner and hearings before it, it found that ground existed to believe the petitioner guilty of professional misconduct. It is then averred:
"In the private hearing upon the third of said charges, the petitioner stated that he did not desire to present further defenses to any of the charges against him and requested leave to file petition to this Court to withdraw and separate himself from the practice of law and have his name stricken from the rolls of The Florida Bar, which leave was granted by the Board of Governors upon the condition that said petition recite that there were charges pending against petitioner and that petitioner did not desire to present defenses thereto.
"The Board of Governors of The Florida Bar has given careful consideration to the facts and circumstances surrounding the charges against petitioner and has also carefully considered the request of petitioner for leave to file his petition herein, and has arrived at the conclusion that when serious charges of professional misconduct are pending against an attorney, and the Board of Governors after consideration *702 thereof and private hearing thereon, has determined that there is reasonable ground to believe the charges are true, that the Board of Governors may properly give leave to such accused attorney, at his instance and request, to file petition to this Court, therein waiving defenses to such charges and praying that the privilege of practicing law be withdrawn from him and his name stricken from the rolls of The Florida Bar, without leave for reinstatement, provided, of course, that the public interest does not render necessary or advisable a further investigation and public prosecution of the pending charges, and provided, further, that the nature of the charges are such that no restitution on the part of the petitioner is called for.
"After careful consideration of this matter, the Board of Governors of The Florida Bar has reached the conclusion that the public interest does not render necessary or advisable a further investigation and prosecution of the pending charges against petitioner, and recommends to this Court that the petition be granted."
The disposition of this matter necessarily involves a consideration of the nature of proceedings of the kind here under consideration. This we shall first discuss.
Disciplinary proceedings against attorneys are instituted in the public interest and to preserve the purity of the courts. No private rights except those of the accused attorney are involved. A judgment in such proceedings does not affect the rights of any injured person to maintain a civil action against the attorney nor prevent the public authorities from the institution of criminal proceedings, if justified by the nature of the charges.
More than fifty years ago, this Court, in the case of State ex rel. Kehoe v. McRae, 49 Fla. 389, 38 So. 605, 606, approved the general principles relating to proceedings of this kind. In that case we said:
"At the common law the disbarment of an attorney was not considered a criminal proceeding. In the case of Ex parte Brounsall, 2 Cowp. 829, Lord Mansfield said: `It is not by way of punishment, but the court on such cases exercise their discretion, whether a man whom they have formerly admitted is a proper person to be continued on the roll or not.' All the courts from that day to this have uniformly held that disbarment proceedings are not designed as a penalty or punishment for any malfeasance or dereliction of duty by an attorney, but are solely for the purpose of purging the roll of legal practitioners of an unworthy or disreputable member, and that in such proceedings no fine, imprisonment, or other punitive sentence can be imposed, but that the judgment therein can only be one simply revoking the formerly granted permit to practice as an attorney and counsellor, and striking the name of such attorney from the roll of attorneys. If a punishable crime has been committed by the attorney, that is of such nature as to be cause for disbarment, the penalty prescribed by law for such crime cannot be administered in a proceeding to disbar, but must be left to the usual proceeding by trial on an information or indictment; but the fact of the commission of such crime may be inquired into in a proceeding to disbar, and, if its commission is therein established against such attorney to the satisfaction of the judge, the sole result of such inquiry will be to strike his name from the roll of attorneys, not as any part of the penalty for such crime, but because the person who his committed it is unfit to be upon the roll of attorneys." (Emphasis added.)
The views expressed by this Court on this subject in 1905 are summarized in the following observation appearing in 5 Am. Jur., Attorneys at Law, Sec. 249:
"The purpose of suspending or disbarring an attorney is to remove from the profession a person whose misconduct has proved him unfit to be intrusted with the duties and responsibilities belonging to the office of an *703 attorney, and thus to protect the public and those charged with the administration of justice, rather than to punish the attorney."
On the same subject, the Supreme Judicial Court of Massachusetts, in Re Keenan, 287 Mass. 577, 192 N.E. 65, 68, 96 A.L.R. 679, text 682, 683, said:
"The primary purpose of such a proceeding is the preservation of the purity of the courts and the protection of the public from attorneys who disregard their oath of office and have been proved unworthy of trust. An attorney is not merely practicing a profession for personal gain; he is an officer of the court. By virtue of its inherent power to control the conduct of its affairs, to maintain its dignity and to enable itself to do justice the court has a summary jurisdiction to inquire into the conduct of its officers and to deal with an attorney found to have committed any evil practice contrary to justice and honesty. * * * A disbarment proceeding is an inquest or an inquiry into the conduct of the attorney. It is the pursuit of a right as well as the performance of a duty by or in behalf of the court to purge its officers of an unworthy member. It involves no private interest except that of the attorney. It is the invocation of a remedy to protect the courts and the public from the impositions arising from the presence of an unfit person among trusted officers. It does not afford redress for a private grievance. It is an action undertaken and carried forward solely for the public welfare."
The question, however, of whether an attorney at law has the right to resign and have his name stricken from the roll of attorneys at his own instance is a subject which has received little attention of the courts. There was little American precedent on the subject when this Court had before it the case of In re Clifton, 1934, 115 Fla. 168, 155 So. 324. It cannot be doubted, however, that the right of an attorney to voluntarily resign was recognized by the English courts long before the American Revolution. Anon. 1 Chit. 557, n; Ex parte Gray, 9 D.P.C. 336; Ex parte Owen, 6 Ves. Jr. 11; Ex parte Foley, 8 Ves. Jr. 33.
In the Clifton case, supra, a petition was filed in this Court on January 13, 1934, in which the petitioner alleged that he was an attorney at law practicing in West Palm Beach, Florida having been duly admitted to the practice of law on November 14, 1927. He further alleged that at the time of the filing of the petition there were no proceedings pending against him under any of the statutes of the State of Florida for his disbarment or suspension and that he desired to "withdraw from the practice of the law and to resign as an attorney and surrender up for cancellation and revocation his certificate admitting him to practice in all and singular the courts of Florida." Upon the filing of this petition in this Court, an order was issued to the Attorney General and the Chairman of the State Board of Law Examiners requiring them to show cause why the prayer of the petition should not be granted. Returns thereto were made by the Attorney General and by the Chairman of the State Board of Law Examiners and there appears in the records of said cause a statement of Circuit Judge C.E. Chillingworth to the effect that prior to the filing of the petition in this Court he had taken certain sworn testimony before him with reference to alleged misconduct of Clifton and had under consideration at the time the petition was filed the question of whether or not he should, pursuant to the statutes, direct the State's Attorney to institute disbarment proceedings against the petitioner. The nature of the charges against the petitioner were set forth in the statement from the Circuit Judge.
The return of the State Board of Law Examiners strenuously resisted the granting of the petition of Clifton, not only on the ground that the petition itself was insufficient *704 because of its failure to allege that the petitioner had closed out his law practice and had no outstanding obligations or unfinished business as an attorney at law, but that the petition contained no recital or affidavit that he had no apprehension of any proceedings being brought for his disbarment or suspension as an attorney at law. Moreover, the response of the Attorney General and Chairman of the Board of Law Examiners attached as an exhibit an order of the Circuit Court of Palm Beach County, Florida directing the State's Attorney to institute disbarment proceedings against the said Clifton and a copy of the motion for disbarment filed pursuant to said order, all of which events took place subsequent to the date of the filing of the petition in this Court. In an opinion by the late Justice Ellis, filed June 4, 1934, supra [115 Fla. 168, 155 So. 326], we said:
"Long prior to 1789 the courts of England had adopted a rule which provided that the name of an attorney would not be stricken from the rolls at his own request without an affidavit that he did not apply therefor under an apprehension that charges would be made against him. * * *
"In the state of Oregon, under a statute which authorizes an attorney to resign by filing in the office of the clerk of the court in which he resides a written resignation as an attorney, the court would not accept the resignation and permit him to avail himself of the privilege which the statute expressly gave when proceedings for the attorney's disbarment were pending against him. * * *
"The relation of an attorney at law to the state and his duties to the court as an officer charged with the duty of aiding in the administration of justice and upon whom rests a responsibility very great and serious in its nature is so well understood and recognized and observed by the bar of this state that we deem it unnecessary to discuss that relation and show why a resignation by an attorney from those duties and obligations should not be permitted in cases where either some other person, as Lord Eldon said, had moved to strike his name from the roll, or where he apprehends that one may do so. So therefore before the court will strike an attorney's name from the roll it will require a showing that no proceedings are pending against him for his disbarment, or an affidavit that he apprehends no such proceedings will be started. In that matter we will follow the English rule adopted in the beginning of the eighteenth century." (Emphasis added.)
In a case decided in this Court in 1868 or 1869, State ex rel. Wolfe v. Kirke, 12 Fla. 278, the power of the courts over those who practiced before them was discussed at length. We quote from that case, text 283:
"The statute of Westminster first, 3 Ed., 1 Chap., 29, which was before there was any recognized class of practitioners as attorneys, provided `that if any sergeant, counter, or other, do any matter of deceit or collusion in the King's Court, or consent to it, to deceive or entrap the court or one of the parties, he shall be no more heard in the court to plead for any one.' Lord Coke says these practices `were against the common law, and therefore this act was made in affirmance of the common law.' 2 Ins., 213, 214."
The statute referred to in the above quotation was passed in the year 1275. The quotation in the opinion is incomplete in that it did not contain the provision which appeared in the original statute that such "sergeant, (countor) or others, * * * shall be imprisoned for a year and a day." The statute actually read as follows:
"If any sergeant, (countor) or others, do any manner of deceit or collusion in the king's court, or consent unto it, in deceit of the court, or to beguile the court, or the party, and *705 thereof be attained, he shall be imprisoned for a year and a day, and from thenceforth shall not be heard to plead in that court for any man; * * *"
Weeks on Attorneys at Law, page 19. See also 6 C.J. 581, Note 58(b); 7 C.J.S., Attorney and Client, § 18.
That the statute, as quoted immediately above, is correct and that that portion with reference to imprisonment was actually considered by this Court in the Kirke case is sure because it is said in that case:
"The power to punish as well by imprisonment as by prohibiting parties from practicing, was a power incident to courts; existed before there was any recognized class of attorneys, and when in fact no roll of attorneys existed, for the first roll was introduced by 4 Hen. IV., Ch. 18.
"That courts have had and exercised a summary jurisdiction of this character over their attorneys, cases from the earliest period to the present time establish." (Authorities cited.)
The authorities relied on by Justice Ellis in the Clifton case for the holding which we are discussing were Ex parte Owen, 6 Vesey, Jr. 11, and Ex parte Foley, 8 Vesey, Jr. 33. These cases are short and we quote them at length.
Ex parte Owen, 6 Ves. Jr. 11, 31 English Reprint, Chancery Book 11, p. 913:
"Mr. Owen moved, as of course, that a solicitor may be struck off the roll at his own request.
"Lord Chancellor [Eldon]. That will not do without an affidavit, that there is no other reason for it; for a solicitor apprehending, that an application will be made against him, may desire to be struck off the roll. Therefore the Courts of Law have required upon an application by an attorney to be struck off the roll, that they shall be satisfied, there is no other reason; and I shall accordingly require an affidavit, that he does not apply under an apprehension that somebody else will.
"Mr. Owen said, there was not the least ground for such an apprehension in this instance: this gentleman had not practised for two years; and made the application with a view to be called to the Bar.
"Lord Chancellor said, for that reason he should the more require the affidavit; for, when it is insisted on in such a case, no objection can be made in any other."
Ex parte Foley, 8 Ves. Jr. 33, 32 English Reprint, Chancery Book 12, p. 262:
"Mr. Springer on behalf of a solicitor moved, that he may be struck off the Roll; stating the reason, that this gentleman was lately appointed a police magistrate; and suggesting, that in such a case there is no occasion for an affidavit, that there is no other reason for the application, as required by the Lord Chancellor in the late case Ex parte Owen (6 Ves. 11).
"The Master of the Rolls said, there must be an affidavit in every case."
In view of the fact that when Ex parte Owen and Ex parte Foley were decided in 1801 and 1802 respectively the English Courts had the power in disciplinary proceedings concerning those who practice before them to imprison as well as disbar, reprimand or suspend we think the language of the Lord Chancellor and the Master of the Rolls in those cases and the results which they reached were based on the premise that by allowing such attorney to resign without the affidavit would deprive the court of its power to punish by imprisonment. We, therefore, conclude that inasmuch as the courts of this Country *706 have never recognized the right to imprison attorneys as well as to disbar them in summary proceedings for disbarment, suspension or reprimand, the English rule has no place in our system, particularly if it is to be construed strictly. To put it another way, there was a valid reason for the rule set forth in Ex parte Owen and Ex parte Foley, supra. The reason for the rule not being present under the American system of jurisprudence, the rule itself can find no support in logic or reason. So we hold that, under certain conditions, an attorney may resign in the absence of the affidavit discussed in the Clifton case, supra.
The judgment in the Clifton case does not do violence to these principles. While it was said in that case that an attorney would not be allowed to resign in the absence of the affidavit referred to, it clearly appeared that not only the circuit judge below but the Circuit Court commission of Palm Beach County had vigorously opposed the granting of such petition to resign. In that case the discretion of this Court could not be said to have been unwisely exercised.
This question has been considered by a few courts, among which are those of Oregon, Washington, Kentucky and Indiana. We point out that in Washington the court has considered the matter to be one involving the exercise of judicial discretion. In some instances, an attorney proposing to resign has been allowed to do so even after conviction upon criminal charges, Application of Lonergan, 23 Wash.2d 767, 162 P.2d 289, while in other cases, under other circumstances, the same court has rejected such application. In re Evers, 41 Wash.2d 942, 247 P.2d 890. In Oregon it is held that the resignation of an attorney without consent of the court is not effectual to preclude his disbarment when proceedings therefor were pending at the time of his resignation. Ex parte Thompson, 32 Or. 499, 52 P. 570, 40 L.R.A. 194, 195; In re King, 165 Or. 103, 105 P.2d 870. In Kentucky, the right of an attorney to resign is recognized but the granting of such request is there a matter to be determined by the court. In re May, Ky., 239 S.W.2d 95. And in Indiana, an attorney at law is allowed to resign but such resignation will not operate to stay proceedings for the disbarment of such attorney, particularly where proceedings have been concluded by a commissioner appointed to hear evidence in disbarment proceedings and disbarment has been recommended. In re Lucas, 230 Ind. 254, 102 N.E.2d 909.
Disciplinary proceedings by The Florida Bar are essentially a function of this Court. While the local committees and the Board of Governors are not technically judicial tribunals, their findings and recommendations should be considered as those of an intermediate agency of this Court. They are in fact an arm of this Court dealing with a vital function of the Court and under its exclusive jurisdiction. See Velkov v. Superior Court in and for Los Angeles County, 40 Cal.2d 289, 253 P.2d 25, 35 A.L.R.2d 1348. While the power to render the ultimate judgment in these cases is vested in this Court, the findings and recommendations of the constituted officers of The Florida Bar are entitled to receive due consideration and are of persuasive force. Copren v. State Bar, 64 Nev. 364, 183 P.2d 833, 173 A.L.R. 284.
The same general principles laid down here with reference to proceedings conducted by The Florida Bar are equally applicable to disbarment proceedings instituted and prosecuted under the applicable statutes of this State. Section 454.23 et seq., Florida Statutes 1953, F.S.A. The power of circuit judges in disciplinary proceedings under these statutes are specifically reserved under Article XI of the integration rule, F.S.A., with the added requirement for filing two copies of the final judgment in this Court and furnishing one copy to the Executive Director of The Florida Bar.
We, therefore, conclude that an attorney at law duly admitted to practice in *707 this State may resign and surrender up and have cancelled his franchise to engage in the practice of the profession but that the acceptance or rejection of such resignation or the terms and conditions which will be imposed on an acceptance, are matters resting within the discretion of this Court to be exercised in accordance with the general principles herein discussed. Before accepting such a resignation, it should be made to appear in a proper and competent manner not only that the public interest will not be adversely affected by such acceptance but also that the acceptance thereof will not adversely affect the purity of the courts nor hinder the administration of justice. When these facts are made to appear in a satisfactory manner, after competent investigation by this Court or its officers, there is no reasonable basis on which the refusal to accept such a resignation could be justified.
The instant case is accompanied by a complete record consisting of evidence and exhibits resulting from an investigation over a long period of time. At the local level, those conducting the inquiries were members of the Bar having intimate knowledge of the individual dealt with. We are satisfied from the record presented that the unqualified resignation of Mr. Harper should be accepted.
It is, thereupon, the order of this Court that the name of Carlos E. Harper be stricken from the rolls of The Florida Bar and the privilege heretofore enjoyed by the said Carlos E. Harper of practicing law in the State of Florida is hereby terminated and withdrawn without leave for reinstatement.
TERRELL, THOMAS, HOBSON, ROBERTS, THORNAL and O'CONNELL, JJ., concur.