In re Robert B. SYMPSON.

No. 42748.

Supreme Court of Missouri,

En Banc.

April 13, 1959.

Curtis J. Quimby, Jefferson City, Kelso Journey, Clinton, for Robert B. Sympson.

WESTHUES, Judge.

On December 10, 1951, this court en banc accepted from Robert B. Sympson his resignation from the Missouri Bar and the surrender of his license to practice law in this state. The court at the same time entered an order of disbarment.

Seven years later, on December 18, 1958, Sympson filed in this court a three-pronged motion. The relief sought in this motion is as follows: first, to correct or expunge from the record that part of the order of this court of December 10, 1951, pertaining to disbarment; second, to permit Sympson to withdraw his resignation of his license to practice law, or, in the alternative, for admission and license as an attorney, or reinstatement; third, for permission (which is the first in Sympson's motion) for oral hearing.

This court, on February 9, 1959, denied all parts of the above motion. On February 24, 1959, Sympson filed a motion for a reconsideration of the action of the court in denying the relief prayed for in the motion filed December 18, 1958. In the motion for a reconsideration, Sympson complains that this court denied his motion without opinion and that the "said record is utterly devoid of the finding of any fact, or any evidence from which a fact may be found, to show that movant is in any manner disqualified for admission to the Bar of Missouri."

This court has given full consideration to all of the matters filed by Sympson in support of his motion for relief and we are satisfied that under the record before us no relief should be granted. We shall set forth our reasons for refusal to grant relief. Sympson, in his motion to correct or expunge from the record the order of disbarment entered on December 10, 1951, makes, among others, the following bold assertions: that the order was made without notice; that the order was made at a time when Sympson was not susceptible to an order of disbarment; that, upon the record, the only matter for decision of this court was whether this court would or would not accept Sympson's tendered resignation as a member of the Bar of Missouri.

Let the record be examined to see what was before this court on December 10, 1951. On June 19, 1951, the Advisory Committee of the Missouri Bar, created by Rule 5 of this court, 42 V.A.M.S., filed an information in this court for the purpose of having a hearing to determine whether Sympson should be barred from the practice of law in this state. The Honorable M. C. Matthes, now a Judge of the U. S. Circuit Court of Appeals, was appointed Special Commissioner to hear the case. The charge against Sympson was, in substance, that he and Alfred H. Osborne had been guilty of inducing two witnesses, by the payment of money to them, to testify falsely in a certain damage suit which had been filed by Osborne and Sympson. Later, the attorney for the Advisory Committee notified the Committee and Sympson that additional charges would be filed. Sympson filed an answer to the charge on June 29, 1951. He also employed an attorney to represent him at the hearings to be held. After a number of continuances, the hearing was set for November 26, 1951, but, due to the absence of Sympson and at the request of his attorney, the hearing was by agreement passed to November 28, 1951. The cases of Osborne and Sympson had been consolidated by agreement.

The report of the Commissioner recites that on November 28, Mr. McLaughlin, attorney for Sympson, announced that his

client desired to surrender his license. A written resignation as a member of the Missouri Bar was filed and the license surrendered. This resignation and surrender were accepted by this court on December 10, 1951. The report of the Commissioner further shows that, after the announcement of resignation and surrender of license was made, the attorney for the Advisory Committee protested and made the following statement: "Since punishment of the offender is not the aim, the sole object of these or any other disbarment proceedings, is to remove those guilty of professional misconduct from the practice of law. The ultimate objective is therefore accomplished when a lawyer guilty of misconduct voluntarily surrenders his license as well as when his license is revoked by the Court after a hearing. If there could be no later application by the disbarred lawyer for reinstatement it would make no difference whether they had voluntarily surrendered their licenses, or had been disbarred by the Court. However, since in either event an application for reinstatement is a possibility, it is important that the reasons for the disbarment or surrender of license be preserved for reference in the event such an application is later filed.

"It is our opinion that since the surrenders by Mr. Osborne and Mr. Sympson are addressed to the Supreme Court of Missouri, there is no alternative but to present these surrenders and resignations to that Court. Even so, in these particular cases, the evidence of flagrant unprofessional and unlawful conduct by Mr. Osborne and Mr. Sympson is so conclusive and convincing that we regret that the offers of surrender prevent the presentation of detailed evidence in support of the charges here made.

"In the eyes of the Advisory Committee and its counsel, these surrenders, in effect, amount to admissions of guilt of the charges made against each of the parties charged. Particularly is this true when it is noted that the surrenders were made at the last possible time before the introduction of evidence in support of the charges was to be commenced and after applications for continuance had been denied both by the Commissioner and by the Supreme Court.

"Being mindful of our duty to the Courts and the Bar of Missouri, as well as to the public, we desire at this time to state to the Commissioner as briefly as possible the nature and substance of the evidence which the Advisory Committee is prepared to present in these proceedings and to request that the Comissioner make these remarks a part of his report to the Supreme Court so that they may be preserved in the official and permanent records of that Court for reference in the event there is a future application for reinstatement by either Mr. Osborne or Mr. Sympson."

It may be noted here that Sympson filed with his motion of December 18, 1958, what was referred to as a partial transcript of the proceedings had before the Commissioner. The above statement made by the attorney for the Advisory Committee and other matters were omitted from the transcript filed by Sympson with the statement that they were "wholly immaterial upon the Motion To Correct Or Expunge Record." We deem the statement quoted supra, as well as the other facts omitted from the "partial" transcript, as very important.

 For business reasons, a lawyer may desire to withdraw from the practice of law and surrender his license. In such a case, it should not be difficult for him, on a proper showing, to be reinstated. Such is not the case before us. Sympson stood charged with unprofessional conduct of the most reprehensible type: subornation of perjury, a felony under our statutes. Would an innocent lawyer under such circumstances surrender his license and resign as a member of the Bar? The question answers itself. The proceedings pending in this court, wherein Sympson was

charged, were for the very purpose of determining whether he was guilty of the charges. If so, disbarment was certain to follow. All these matters were before this court when, on December 10, 1951, Sympson's surrender of his license and his resignation from the Bar were accepted. This court had jurisdiction of the subject matter and also had jurisdiction of the person of Sympson. He was duly notified, was represented by an attorney, and after due deliberation, took the action he did rather than face the charges against him. Those interested in the law on this subject may find the rules governing such a situation in the case of Application of Harper, Fla., 84 So.2d 700, 707, 54 A.L.R.2d 1272, Annotations, pp. 1280–1286. In the Florida case, it was held that an attorney may resign and surrender his license to practice while, as in this case, disbarment proceedings are pending. However, as the court ruled, a resignation under such circumstances may be accepted upon such conditions as the court may deem proper. In that case, the resignation was accepted but the court made a further order barring the attorney from the practice of law and that his right to practice law "is hereby terminated and withdrawn *without leave for reinstatement.*" (Emphasis supplied) This court would have been justified in making a similar order on December 10, 1951.

The above matters were all before this court on December 10, 1951, but they were not all. On that very day, this court decided the cases of Osborne, Sympson, and Cabbell v. Purdome, 244 S.W.2d 1005, 29 A.L.R.2d 1141. That was a habeas corpus proceeding to determine the validity of a judgment of the circuit court adjudging Sympson and others guilty of criminal contempt. The charge was that Sympson and others had collectively sought to obstruct the administration of justice by presenting false testimony in an action for personal injuries. The personal injury case was then pending on appeal in this court. See Burton v. Moulder, 245 S.W.2d 844. So,

on the very day that this court accepted Sympson's resignation and ordered him disbarred, this court affirmed his conviction of criminal contempt. Note what Judge Conkling had to say in his concurring opinion, 244 S.W.2d loc. cit. 1016: "From the foregoing and from the record before us we must assume as true (and it is not so much as denied) that: Petitioners Osborne and Sympson, then attorneys and sworn officers of the court, were counsel for plaintiff Burton in the Burton-Moulder case; knowing that Everage and Jones did not witness the automobile collision and that the latter two knew nothing whatever about the facts thereof the petitioners Osborne and Sympson nonetheless told them what the latter named two desired that Everage and Jones testify to, coached the false witnesses in such false testimony, had them falsely testify in court and Osborne corruptly paid Everage for so falsely testifying; and upon the trial of the Burton-Moulder case, Everage and Jones were called as witnesses by petitioners Osborne and Sympson (as counsel for plaintiff) and Everage and Jones falsely testified (as arranged by Osborne and Sympson) as to the purported details of that automobile accident. The petitioner Cabbell was with Osborne and Sympson at the time the latter two persuaded Everage to give such false testimony.

"And now, in this proceeding, Osborne and Sympson, who were lately armed with a license to practice and have been purporting to practice law, make the unthinkable and not even fairly debatable contention that the just above set out facts do not sustain a judgment of criminal contempt."

In his motion of December 18, 1958, Sympson says, "Petitioner further advises the Court that upon the first intimation that there had been any unethical conduct connected with a trial in which petitioner had participated, petitioner, because of his belief that the best interests of his clients required him so to do, forwarded his law

business to other lawyers, and from April, 1951, to November 28, 1951, voluntarily refrained from the practice of law and doing a law business, except in such instances wherein he was unable to secure other counsel to represent his clients; * * *."

█ What do our records show? Keep in mind that Sympson was found guilty of criminal contempt in connection with witnesses Everage and Matt Jones (Osborne v. Purdome, supra) who testified in the case of Burton v. Moulder, supra. On September 18, 1951, Osborne and Sympson filed a brief for appellant in the case of Burton v. Moulder, supra. That was *after* Osborne and Sympson had been found guilty of criminal contempt and only a few weeks before this court affirmed that conviction. In the brief (Burton v. Moulder, supra) on page 17, filed by Osborne and Sympson, they set out the substance of the evidence of Vernon Everage and on page 18, the evidence of Matt Jones. By presenting the evidence of those witnesses, Sympson vouched for their veracity. The following is what this court had to say in that case as to the evidence of those witnesses, 245 S.W.2d loc. cit. 845, 846(1): "In reviewing this cause we are ignoring the whole of the testimony of plaintiff's witnesses Everage and Jones. We think this is a case wherein justice requires us to take judicial notice of the records in the cases of Osborne v. Purdome (Sympson v. Purdome and Cabbell v. Purdome), Mo.Sup., 244 S.W.2d 1005, [29 A.L.R.2d 1141]." Furthermore, Sympson personally argued the case before this court (on October 10, 1951) for the appellant. Those actions on the part of Sympson do not indicate any remorse on his part and such actions were inconsistent with his statement in his present motion "that upon the first intimation that there had been any unethical conduct connected with a trial in which petitioner had participated, petitioner," forwarded his law business to other lawyers. Sympson, in the Burton v. Moulder case, vouched for the veracity of witnesses Everage and Jones

and now contends that they were unworthy of belief and were perjurers. We may comment that, of course, they were perjurers. Who else could be hired to give false testimony? It is an old saying, "When theeues fall out, true men come to their goode." (John Heywood, Proverbs, Pt. ii, ch. 9.)

█ Sympson, in the disbarment proceeding, saw fit not to testify or offer any evidence in his behalf. The same occurred in the criminal contempt proceeding where he did not deny any of the incriminating evidence against him. Such actions on his part may be considered against him. 7 C.J.S. Attorney and Client § 33b, p. 790. Now, after years have passed, as predicted by the attorney for the Bar Committee, Sympson asks to be reinstated. Witnesses then available have died or cannot be found. It may be interesting to note that Matt Jones, one of the witnesses who testified in a number of the Osborne and Sympson cases, came to an untimely and horrible death by being killed and then thrown into the Missouri River with a concrete block fastened to his ankles with tire chains, after he had made it known that he would testify. See Osborne v. Purdome, Mo., 250 S.W.2d 159, loc. cit. 161, for a detailed statement as to the manner in which he was murdered. The murder occurred on July 22, 1951, the night before he was to testify in this case, that is, Osborne v. Purdome, Mo., 250 S.W.2d 159.

█ The disbarment of an attorney is not for the purpose of punishment, but is primarily for the purpose of protecting the public and the Bar. Courts have a solemn duty to the public and to the legal profession to enforce the code of ethics governing the conduct of attorneys. A lawyer who has proved himself to be dishonest should not be permitted to practice law. Feelings of sympathy or a feeling that the attorney has been sufficiently punished are not grounds for reinstatement. In re O'Keefe, 62 Mont. 534, 205 P. 667; In re O'Connell, 64 Cal.App. 673, 222 P. 625;

Application of Harper, supra; 5 Am.Jur. 410, Sec. 249. Petition for reinstatement of a suspended or disbarred attorney is addressed to the sound discretion of the court. 7 C.J.S. Attorney and Client § 41, pp. 816, 817.

We have read with interest the letters of lawyers and judges filed with Sympson's motions. These letters, of course, were solicited. Most of them so state. It is apparent from their contents that they were written out of sympathy or on a theory, as expressed in a number of them, that Sympson has been sufficiently punished. We have considered the letters and giving them due weight, we nevertheless feel that our duty compels us to deny all of the relief prayed for.

We have also considered the fact that the criminal charges filed against Sympson were finally disposed of without a final conviction. We say "final conviction" advisedly because in one case Sympson was convicted by a jury but the trial judge granted a new trial. We do not feel called upon to comment further on the disposition of the criminal cases because the fact that an attorney has been acquitted on a criminal charge is not a defense to a disbarment proceeding. 7 C.J.S. Attorney and Client § 21d, p. 740. Of course, the conviction of Sympson of criminal contempt was never set aside but was affirmed by this court, Osborne v. Purdome, 244 S.W.2d 1005, 29 A.L.R.2d 1141, certiorari denied 343 U.S. 953, 72 S.Ct. 1046, 96 L.Ed. 1354.

No useful purpose would be served by granting permission to present this matter in an oral argument.

It is our order that the relief sought in the motion filed December 18, 1958, be denied; further, that the motion for a reconsideration be overruled.

It is so ordered.

All concur.