208 So.2d 809 (1968)
THE FLORIDA BAR, Complainant,
v.
N. Alfred WINN, Respondent.
No. 36450.
Supreme Court of Florida.
March 20, 1968.
Rehearing Denied April 30, 1968.
Alan C. Sundberg, St. Petersburg, for The Florida Bar, complainant.
George N. Meros, of Meros & Wilkinson, St. Petersburg, for respondent.
DREW, Justice.
This case is before the Court for review of the judgment entered by the Board of Governors of The Florida Bar on June 7, *810 1967, the pertinent portions of which are as follows:
"The Complaint against respondent was set forth in two separate counts. Count I dealt with his representation of a Mrs. Hickman in connection with divorce proceedings, incompetency proceedings, minor criminal charges and a personal injury case. The evidence is disputed concerning the propriety of the fees charged this client. The evidence is undisputed that the respondent continued his representation of this client without advising the courts of her adjudication of incompetence. The Complaint alleged that respondent charged his client an exorbitant or extortionate fee in the amount of $3500 for representing her in a divorce proceeding. During that time the client was living with her parents and her earnings were $14.26 per week as a beautician trainee. Respondent undertook extensive litigation on behalf of the client which was alleged to be unproductive and ill-considered.
"Count II charges the respondent with extracting an extortionate fee from his client, Evelyn Giese. It was alleged that the respondent entered into a written contingent fee contract providing for the payment of a 50% contingent fee to be computed upon the full value of any property which he would be instrumental in recovering from her husband. Although preliminary work was done in the defense of this divorce case, the plaintiff-husband died before the case came to trial. The parties homestead of the net value of $8000 passed to Mrs. Giese by right of survivorship. Respondent then billed his client for $2000 representing 50% of the value of the husband's estate which she received upon his death. Payment of said $2000 fee was secured by a note and mortgage upon the property which was executed by the client and delivered to the respondent.
"After trial on the merits, the referee recommended that respondent be found not guilty upon Count I because his conduct therein did not clearly violate the canons of ethics. With respect to Count II, the referee recommended that the respondent be found guilty, that he pay costs and be placed upon probation for an appropriate period of time.
"After consideration, the Board of Governors concurred in the finding of not guilty upon Count I of the Complaint. It concurred in the referee's finding of guilt upon Count II. It further found that said contingent fee contract was illegal and extortionate. The Board directed that respondent be suspended from the practice of law for six months and thereafter until he shall make restitution to his client, Giese, of $2,000 and until he shall pay the costs of these proceedings in the amount of $1,245.22."
We have heard oral argument and have reviewed the record in this proceeding. Our examination of the record in this cause reveals that the Board of Governors of The Florida Bar was in error in its finding that the referee exonerated the respondent from guilt as to Count I of the complaint. No such finding appears from the record in this cause.
We are, nevertheless, generally in accord with the Board's judgment but are of the view that the recommendation that the respondent be required to make restitution of an attorney's fee of $2,000 is unauthorized. An exorbitant or extortionary attorney's fee is properly the subject of inquiry in a disciplinary proceeding and, if established, will support an appropriate disciplinary order. The rule (11.02 [4], Article XI, Integration Rule, Florida Bar) provides "controversies as to the amount of the fees are not grounds for disciplinary proceedings unless the amount demanded is extortionate or the demand is fraudulent." This rule contemplates that a member of The Bar may be properly disciplined for such condemned conduct. Disciplinary proceedings are essentially a function of the Court instituted in the public interest and designed to preserve the purity of The Bar. No private rights except those *811 of the accused attorney are involved. Application of Harper, Fla., 84 So.2d 700, 54 A.L.R.2d 1272. "A judgment in such proceedings does not affect the rights of any injured person to maintain a civil action against the attorney nor prevent the public authorities from the institution of criminal proceedings if justified by the nature of the charges." Application of Harper, supra. Again, in Application of Harper, supra, this Court quoted with approval the following statement from In re Keenan, 287 Mass. 577, 192 N.E. 65, 68, 96 A.L.R. 679, text 682, 683. "It [disciplinary proceedings] does not afford redress for a private grievance. It is an act undertaken and carried forward solely for the public welfare." This does not mean that where monies entrusted to an attorney are converted to his own use, the repayment of such sums may not be made a condition of reinstatement. The rule (11.02 [4], Article XI, Integration Rule) specifically provides the circumstances and conditions under which the conversion of funds may be the subject of a requirement for repayment. Controversies, however, concerning the reasonableness of fees charged to and paid by clients are matters which by the very nature of the controversy should be left to the civil courts in proper proceedings for determination. What may be a reasonable fee in one area of the State may be unreasonable in another and this Court can take judicial knowledge of the fact that the opinions of reputable lawyers concerning what constitutes a reasonable fee in any given situation often are as far apart as the poles. Accordingly,
It is ordered that the respondent be suspended from the practice of law for a period of six months from the effective date of this judgment. The Florida Bar shall have and recover from respondent the costs of these proceedings in the amount of $1,245.22, for which let execution issue.
It is so ordered.
CALDWELL, C.J., and THORNAL and ADAMS, JJ., concur.
ERVIN, J., dissents with Opinion.
ERVIN, Justice (dissenting).
I do not agree with the Board of Governors and the apparent concurrence of the majority of the Court that Respondent is not guilty of the complaint in Count I, or at least to a part of the charge therein. It appears from the record with respect to Count I that Respondent represented a Mrs. Hickman in several matters and that he received from her $3,748.28 in fees; that most of these fees came not directly by payments from Mrs. Hickman but from funds received by Respondent on behalf of Mrs. Hickman, viz., proceeds of the sale of a lot owned by her, from the settlement of an accident case, and from the settlement of a $4,000 mortgage upon the residence of the Hickmans, which mortgage was given to her by Mr. Hickman as a result of a partition suit brought by him subsequent to their divorce. Respondent claimed the right to pay over to himself considerable of these funds pursuant to an assignment he had Mrs. Hickman execute on August 24, 1962, which assigned to him all of her title and interest in the proceeds of the partition suit "as security for the payment of all legal fees, costs, expenses and disbursements now owed or incurred in the future. * * *" It appears that Mrs. Hickman was adjudged incompetent on November 4, 1963 and committed to the G. Pierce Wood Mental Hospital in Arcadia, Florida, on November 19, 1963. Her sanity was restored on June 25, 1964. Respondent handled Mrs. Hickman's restoration of sanity proceedings in the county judge's court at the time the circuit court in the foreclosure of the $4,000 mortgage had appointed a guardian ad litem to review an accounting of Respondent of Mrs. Hickman's funds. It appears Mrs. Hickman was represented by Respondent in the legal matters referred to before, during, and after her period of incompetency. At all times the Respondent dealt with Mrs. Hickman as if she were sui juris and fixed and collected his said fees from her funds absent any approval by a duly appointed legal *812 guardian or by the circuit judge or county judge. In this connection the referee made a recommendation of guilt as to Count I as follows:
"While the `Assignment' executed by respondent's client [Mrs. Hickman] does not violate any rule of substantive law known to your Referee, it would appear that in the instant case it should be treated as void as in Violation of Rule 11.02(4) of the Integration Rule of the State of Florida for the reason that the `Assignment' obviates the obvious intention of the aforementioned rule. * * *
"* * * The Referee does, however, find that the respondent knew or should have known of the incompetency of his client during the period of time alleged in the Complaint and that his failure to disclose the same to the Court in litigation then pending, as well as the withdrawal of funds from the registry of the Court on behalf of his client without filing a suggestion of incompetency amounts to a violation of Rule 3 of the Additional Rules Governing the Conduct of Attorneys in Florida, and the respondent, is, therefore, found guilty of such violation."
I agree with the referee the Respondent is guilty of Count I to the extent found by the referee and quoted just above.
Count II of the complaint involved the attorney-client relationship between Respondent and Mrs. Evelyn Giese. Respondent entered into a contingent fee contract with Mrs. Giese providing for the payment to him of a contingent fee of 50 per cent to be computed upon the full value of any property which he was instrumental in recovering from Mrs. Giese's husband. The contract stipulated that if divorce proceedings or, more accurately, if counter-divorce proceedings (Mr. Giese had filed divorce proceedings against his wife) became necessary on behalf of Mrs. Giese in connection with recovering any of said property, Respondent would file the same. Respondent did some preliminary work in defense of Mrs. Giese in the hsuband's divorce proceedings. However, it does not appear Respondent was required to do more than this preliminary work under the attorney-client contingent fee contract, because Mr. Giese died before his divorce proceedings came on for trial. The parties' homestead of the net value of $8,000 passed to Mrs. Giese by right of survivorship. The homestead was held by them as an estate by the entireties. Respondent then billed his client for $2000, representing 50 per cent of the value of the husband's interest in the homestead which she received upon his death. Payment of the $2000 fee was secured by a note and mortgage upon the property which was executed by Mrs. Giese and delivered to the Respondent.
My disagreement with the majority opinion is that I believe that under these particular circumstances an exorbitant fee was charged by Respondent pursuant to the contingent fee contract for "recovery" of property from the deceased husband's estate. To my mind, the Respondent was not instrumental in "recovering" any property by his legal efforts, but the property of her husband which Mrs. Giese received came to her solely due to the adventitious circumstance  at least from Mrs. Giese's "recovery" standpoint  of the husband's death, and by operation of the law of survivorship.
Furthermore, the Board of Governors found the contingent fee contract was contrary to public policy insofar as it provided for the possibility of Respondent handling divorce proceedings for Mrs. Giese as a necessary predicate to recovering property from her husband. See Fla.Jur., Attorneys at Law, § 54, Contracts for Contingent Fees, page 389; also 30 A.L.R. 188.
I think that under the foregoing circumstances the fees charged and secured by the note and mortgage was at least prima facie exorbitant and the Board of Governors was correct in ordering the $2000 refunded (see Rule 11.02(4), Article XI, Integration Rule; also Rules 12 and 13 of the Canons of Professional Ethics Governing Attorneys) subject, however, to this reservation: *813 that if the Respondent elects within a reasonable time to bring an appropriate action against Mrs. Giese in a court of competent jurisdiction to determine whether he is entitled to the $2000 or any part thereof as the value of any legal services he rendered Mrs. Giese, he should not be required to refund the amount found by the court to be due him. It is assumed that Respondent is still in position to have this question determined if he is so advised, since from the record it appears he holds the note and mortgage Mrs. Giese executed securing the $2000 fee.
With respect to the disciplinary action to be meted the Respondent because of the violations indicated above, I disagree with the Board of Governors and agree with the recommendation of the referee, except as hereinafter noted.
The referee recommended as follows:
"The Referee is of the opinion that the conduct of the respondent, which is the subject matter of these proceedings, was the result of a lack of appreciation by respondent of the effects of his conduct rather than intentional acts involving moral turpitude. The Referee, therefore, believes and recommends that the respondent should be reprimanded, charged with the costs of this proceeding, and placed on probation for an appropriate period of time sufficient to evidence his departure from the practice which gave rise to this Complaint."
I agree that the Respondent was not proven guilty of moral turpitude, but was grossly and blindly obtuse to applicable rules of professional ethics and public policy in his conduct concerning his clients in the particulars noted. He considered he had full liberty under his contractual arrangements for fees with them to pay over one client's funds to himself as fees, notwithstanding her incompetency, and he construed his contract with the other client (Mrs. Giese) to entitle him to his fee because the result that eventuated, i.e., the passing of said property to Mrs. Giese on the death of her husband by the law of survivorship, was the equivalent of Respondent obtaining it by his legal efforts.
I think the discipline commensurate with the foregoing circumstances would be a reprimand of him for his unprofessional conduct; that he be placed on probation for a period of one year; that he refund the $2000 fee to Mrs. Giese, or disclaim his right to receive it if he has not yet collected it, provided that he may if he deems it appropriate have determined, by filing a suit at an early date in a court of competent jurisdiction, whether he is entitled to retain any part of the fee for the preliminary defense work he did in her husband's divorce proceeding against Mrs. Giese; that he be required to pay the costs of these proceedings in the amount of $1,245.22 and in default of any of such requirements that the Respondent be subjected to further discipline.
I have dissented in this case because I believe the Respondent's action in taking funds belonging to his client while she was declared an incompetent and in taking a fee under a contingent fee contract when his legal efforts were not instrumental in recovering property from his client's husband, are instances of professional misconduct of first impression in our jurisdiction which should be clearly noted and discussed. The main point of cleavage I have with the majority opinion is that it holds the $2000 does not have to be refunded as an exorbitant fee in any event. It appears to me that the Board of Governors of the Florida Bar and this Court have a duty in disciplinary cases to determine whether an attorney has exacted an extortionate or exorbitant fee under flagrant and extreme circumstances of professional misconduct and, as a part of the discipline meted, provide for refund of the fee; and the attorney should either refund the fee as a condition precedent to the lifting of the suspension or disbarment, *814 or in the alternative expeditiously obtain an adjudication from a court of competent jurisdiction in a proper case that he is entitled to the fee or a part thereof.