PER CURIAM.
This disciplinary proceeding against John H. Lowe, Jr. is before us on the complaint of The Florida Bar and the report of the referee. The referee recommends that Lowe be suspended for three years and thereafter until he shall prove rehabilitation, pay the costs of these proceedings, and make restitution to his client in the amount of $7,500. Lowe petitions this Court for review of the referee’s findings of fact and recommendations of guilt and discipline. We have jurisdiction, article V, section 15, Florida Constitution, and approve the referee’s findings and recommendations.
The referee found that Lowe had violated Florida Bar Disciplinary Rules 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 2-106(A) (entering into an agreement for, charging, or collecting an illegal or clearly excessive fee) of the former Code of Professional Responsibility. These violations occurred during Lowe’s representation of a client, Robert C. Ingram, from 1980 to 1983.
The factual circumstances surrounding this disciplinary proceeding and supporting the referee’s findings are as follows. In late 1980, Lowe undertook to represent Ingram, a retired and disabled serviceman, in a tort suit against the United States and the Hillsborough County School Board. The basis for the suit was that the defendants had tortiously attempted to reassign Ingram, who was employed by the School Board as an instructor at Hillsborough High School in the Reserve Officer Training Corps (ROTC), to other duties. Lowe and Ingram were personal friends dating back approximately twelve years to the time when Lowe was a cadet in ROTC. The parties entered into a representation agreement whereby Ingram paid Lowe $5,000 as an initial retainer fee and contingently agreed to pay thereafter 33⅛% of any settlement proceeds received prior to trial or 40% of any award achieved at trial. Federal law at the time limited attorney fees in such tort suits to 25% of any award recovered. Ingram also agreed to pay all costs of investigation, preparation, and court.
In March 1982, trial dates on the tort suit were assigned for February 1983. These trial dates almost immediately became a nullity when Lowe successfully moved for recusal of the trial judge. In January 1983, the new trial judge dismissed the School Board as a defendant because of the failure of the plaintiff to file a claim in writing within three years of the accrual of such claim as required by section 768.28(6), Florida Statutes (1979). It appears that Ingram was not advised of this dismissal or that the trial would not take place in February. Despite these setbacks, Lowe continued to assure Ingram that they were likely to receive a major award from the tort suit, and requested and received an additional $7,500 from Ingram. The purpose of this $7,500, which is hotly contested, is the key point in this proceeding. Ingram testified that he was told it was for court costs associated with the purported February trial. It is uncontroverted that Lowe did not enter the money into a trust account, as he would be required to do if it were for costs. Lowe maintains that the money was for attorney fees for representing Ingram or family members in unrelated legal matters. According to Lowe, these unrelated legal matters consisted of representing Ingram in a tort suit against Sears Roebuck for the allegedly defective installation of an air-conditioning unit, representing Ingram in a hearing before the Veteran’s Administration (VA), representing Ingram’s adult daughter in a marriage dissolution, and representing Ingram’s adult son in a criminal matter. The referee rejected Lowe’s explanation and we agree. The record shows that Lowe had previously retained $1,400 of a $2,500 settlement with Sears Roebuck for attorney fees and costs. The referee found this fee to be excessive *8 and we agree. In any event, the Sears Roebuck fee had been previously satisfied. Second, on the YA hearing, federal law limits attorney fees to $10 on such matters and the referee found that even on a quantum meruit basis, Lowe could not plausibly claim, as he did, that he was entitled to $5,000 for research on the VA hearing. Concerning the representation of the adult children, Lowe introduced no evidence showing that Ingram was responsible for these fees. The record suggests that Lowe routinely failed to prepare time cards for time spent on representation or to reach and memorialize representation agreements. The record also shows that the representation of the son consisted of meeting briefly with him on the date of arraignment and recommending that he plead guilty. Moreover, the . record shows that Lowe never provided Ingram with an itemized statement of services provided and fees charged despite Ingram’s repeated requests for such a statement. We agree with the referee that, under these circumstances, Lowe deceived Ingram into believing the $7,500 was needed for an immediately impending trial from which Ingram would receive a substantial award.
Despite the record evidence above, Lowe nevertheless contends that the referee erred and that the record does not support the findings of guilt. We disagree. It is well settled that the referee serves as the finder-of-fact. The referee heard the witnesses, judged their demeanor and credibility, reviewed all of the evidence, and resolved the conflicts. The Florida Bar v. Stalnaker, 485 So.2d 815 (Fla.1986), and cases cited therein. We are satisfied that the record shows a course of conduct on Lowe’s part involving deceit and misrepresentation and the charging of illegal or excessive fees. We approve the referee’s findings of guilt.
Lowe also contends that the recommended discipline is too harsh. We disagree. The record shows that the client is a person of modest means who obtained the money paid to Lowe through mortgages on the family home in the expectation, encouraged by Lowe, that there would be a substantial return, perhaps in the millions, from the suit.* In addition to the usual fiduciary relationship of a lawyer to a client, Lowe also enjoyed a personal relationship of trust with the client. We note also that in his relatively short career, Lowe has previously received a private reprimand and probation for trust account irregularities and another private reprimand for physically threatening a parole officer before a hearing.
We approve the referee’s recommendations. Respondent Lowe is suspended for three years and thereafter until rehabilitation is proven and restitution of $7,500 made to Robert C. Ingram. Because Lowe has already ceased practicing law, the suspension is effective immediately.
Judgment for costs in the amount of $2,272.09 is hereby entered against respondent for which sum let execution issue.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.

 On advice of new counsel, after discharging Lowe, the client voluntarily dismissed the action against the United States.