583 So.2d 307 (1989)
THE FLORIDA BAR, Complainant,
v.
Alphonse DELLA-DONNA, Respondent.
No. 69324.
Supreme Court of Florida.
June 22, 1989.
Rehearing Denied August 20, 1991.
*308 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Donald A. Wich, Jr. of Sullivan, Bailey, Wich & Stockman, P.A., Special Bar Counsel, Pompano Beach, for complainant.
Larry D. Simpson of Davis, Judkins & Simpson, Tallahassee, Florida; John A. Weiss, Tallahassee, and George Kushinka of Wisse, Kushinka, Calhoun & Godwin, Warner Robins, Ga., for respondent.

COSTS MODIFIED ON REHEARING GRANTED
PER CURIAM.
Both the Florida Bar and Alphonse Della-Donna, a member of the bar, petition for review of a referee's report recommending that Della-Donna be disbarred. We have jurisdiction pursuant to article V, section 15, Florida Constitution, and agree with the referee that Della-Donna should be disbarred from the practice of law in this state.
Della-Donna drew up a will and estate-planning documents, including those for several trusts and foundations, for Leo Goodwin, Sr. (Sr.), who died in 1971, leaving an estate valued at more than $55,000,000. Under Sr.'s estate plan Della-Donna and his partner acted as legal counsel for the estate, the trusts, and the foundations, while Della-Donna held fiduciary positions as trustee and officer of the foundations and one trust. After the death of Leo Goodwin, Jr. (Jr.), in 1978, Della-Donna also became personal representative of Sr.'s estate. Della-Donna also prepared a will and documents creating several trusts for Pauline Burns, who died in 1974. He acted as legal counsel for the Burns estate and held fiduciary positions regarding that estate and the Burns trusts.
In 1986 the Florida Bar filed a complaint against Della-Donna in connection with the Goodwin and Burns estates. The first and second of the complaint's three counts deal with matters arising from the Goodwin estate; the third with the Burns estate. In count one the bar charged that Della-Donna brought Nova University (a major beneficiary of one of the Goodwin trusts) to the brink of financial ruin by, among other things, attempting to remove Nova as a beneficiary and to replace it with other organizations; fostering frivolous, unfounded, and unauthorized litigation involving Nova; blocking any release of trust funds to the beneficiaries; and demanding that Nova pay him $1,100,000 of its trust distribution to stop further legal proceedings. According to the bar, Della-Donna engaged in this conduct for personal and financial self-aggrandizement and charged clearly excessive fees, acted under actual conflicts of interest, and intentionally misused funds from Sr.'s estate. The second count alleged that Della-Donna, among other things, worked under a conflict of interest and promoted frivolous litigation to defeat the interests of Sr.'s illegitimate great grandaughter when all concerned parties agreed that she would take under Sr.'s will and general trust as a descendant of her deceased father. For the third count the bar claimed that Della-Donna improperly refused to disburse portions of the Burns estate in order to generate more attorney, executor, and trustee fees for himself and that he worked under a conflict of interest, breached his fiduciary duties, and charged clearly excessive fees, among other things.
The referee conducted a hearing that totalled thirty-five days over the summer of 1987. In the introduction to his lengthy report the referee rejected Della-Donna's claim that he could not be disciplined because he acted as a client rather than as a lawyer as to the charges regarding the Goodwin matters. Instead, the referee stated: "He is responsible as an officer of the Court for the plethora of litigious and frivolous Court proceedings in which he was involved plus matters wherein there were conflicts of interest on his part and excessive fees extracted on his behalf." The referee went on to state that the testimony and exhibits presented during the hearing established "a pattern of conduct and attitude" by Della-Donna "to misuse the judicial system for his personal advancement *309 and to disregard ethical considerations."
In his findings of fact, the referee specifically found Della-Donna's conduct to have been "motivated by personal and financial self-gain and aggrandizement;"[1] that Della-Donna "acted in complete derogation of his ethical and fiduciary responsibilities to enrich, unjustly and financially, himself and the attorneys working on his behalf;" and that "the evidence concerning Respondent's conduct taken as a whole, when viewed in a total perspective, is clearly indicative of fostering protracted unnecessary litigation for the self-interests and desires of Respondent alone." The referee also found that Della-Donna used funds from Sr.'s estate[2] "to advance issues in which ... the estate had no reasonable, actual or necessary interest" and that $100,000 of the $1,100,000 paid by Nova "constituted an excessive fee and was clearly an unlawful and unethical procurement." The referee concluded that clear and convincing evidence supported the first two counts.
As to the third count, the referee specifically found that Della-Donna "acted in derogation of his legal and fiduciary responsibilities," that he "caused extensive delay, damage and expense to the Burns' Estate and beneficiaries," and that he "acted in bad faith in handling the Burns' estate in ... misusing positions of trust for personal and financial gain." The referee also found $46,498.37 of Della-Donna's fees from the Burns estate to be "clearly excessive ... both in amount and ... the unethical manner in which" Della-Donna "extracted" that money. Although the referee decided that Della-Donna did not commit extortion, he found that clear and convincing evidence supported the bar's allegations.
The referee recommends that Della-Donna be found guilty of numerous violations as charged in the bar's complaint "on all allegations and charges except that the unethical conduct was not tantamount to extortion."[3] As punishment, the referee recommends that Della-Donna be disbarred for three years, that restitution be made to Nova University,[4] Sr.'s estate,[5] and the Burns estate,[6] and that Della-Donna pay costs in the amount of $104,700.10, plus interest from the date of the referee's report (January 27, 1988).
In his petition for review Della-Donna denies that he acted unethically and claims, as he did before the referee, that he cannot be disciplined for actions he took as a client rather than an attorney. He also claims that he cannot be disciplined for working under conflicts of interest when he did not act as a lawyer representing a client. The bar, on the other hand, argues in its petition *310 that Della-Donna should be disbarred for five, rather than three, years, that restitution should include the additional $1,000,000 paid by Nova, and that the referee erred in finding that Della-Donna did not extort the fees from Nova and the Burns estate.
Like the referee, we cannot agree with Della-Donna's contention that our rules and professional ethics do not apply to an attorney who acts, at some time or another, as a client rather than as an attorney. Conduct while not acting as an attorney can subject one to disciplinary proceedings. The Florida Bar v. Hefty, 213 So.2d 422 (Fla. 1968). As this Court has stated before, "`an attorney is an attorney is an attorney.'" The Florida Bar v. Bennett, 276 So.2d 481, 482 (Fla. 1973). Even in personal transactions and when not acting as an attorney, attorneys must "avoid tarnishing the professional image or damaging the public." Id.; The Florida Bar v. Hooper, 507 So.2d 1078 (Fla. 1987); State ex rel. The Florida Bar v. Clements, 131 So.2d 198 (Fla. 1961). We agree with the referee that this claim is simply untenable. The practice of law is a privilege which carries with it responsibilities as well as rights. That an attorney might, as it were, wear different hats at different times does not mean that professional ethics can be "checked at the door" or that unethical or unprofessional conduct by a member of the legal profession can be tolerated.
Our conclusion regarding Della-Donna's second contention is similar. An attorney's working under a conflict of interest is not proper and will not be tolerated.
It is settled that, except in exceptional circumstances ..., an attorney may not represent conflicting interests in the same general transaction, no matter how well-meaning his motive or however slight such adverse interest may be. The rule in this respect is rigid, because it is designed not only to prevent the dishonest practitioner from fraudulent conduct but also to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.
The Florida Bar v. Moore, 194 So.2d 264, 269 (Fla. 1966). See also The Florida Bar v. Bennett; Rules Regulating Fla. Bar, rule 4-1.7. Della-Donna labored under actual conflicts of interest. His claim that Sr. intentionally created the conflicts of interest in his will and estate-planning documents, even if true, does not excuse Della-Donna's misconduct.
A referee's findings of fact are presumed correct and will be upheld unless clearly erroneous. The Florida Bar v. Stalnaker, 485 So.2d 815 (Fla. 1986). The standard on review is whether those findings are supported by competent substantial evidence, and this Court will not substitute its judgment for the referee's. The Florida Bar v. Hooper, 509 So.2d 289 (Fla. 1987). After studying this record, we find competent substantial evidence to support the referee's findings that Della-Donna should be disciplined.
It is the referee's responsibility to find facts and resolve conflicts. Id. While others might view the evidence differently, we do not find the referee's conclusion that Della-Donna's conduct did not rise to the level of extortion clearly erroneous or lacking in evidentiary support. Moreover, we agree with the referee that the restitution recommended as a condition of readmission should not include the $1,000,000 paid by Nova.
"[R]estitution is symbolic of repentance, honesty and a desire to do the right thing under the circumstances." In re Dawson, 131 So.2d 472, 474 (Fla. 1961). When client funds have been converted to an attorney's own use, restitution has long been seen as a condition precedent, evidencing rehabilitation, to an attorney's readmission or reinstatement to the bar. See, e.g., In re Hurtenbach, 157 Fla. 871, 27 So.2d 348 (1946). Restitution of excessive fees, on the other hand, has had a more checkered history.
*311 In The Florida Bar v. Winn, 208 So.2d 809 (Fla.), cert. denied, 393 U.S. 914, 89 S.Ct. 236, 21 L.Ed.2d 199 (1968), this Court held that, although charging excessive fees could form the basis for bar disciplinary proceedings, it did not have the authority to order restitution of an excessive fee. The Court recognized that disciplinary proceedings are not designed to redress private grievances and stated: "Controversies ... concerning the reasonableness of fees charged to and paid by clients are matters which by the very nature of the controversy should be left to the civil courts in proper proceedings for deliberation." Id. at 811. Seven years later, however, this Court ordered restitution of an excessive fee as a condition of reinstatement, stating that the fee "was not merely excessive, but was so `clearly excessive' as to constitute a violation of DR 2-106 and to warrant the imposition of appropriate disciplinary measures."[7]The Florida Bar v. Moriber, 314 So.2d 145, 149 (Fla. 1975). Moriber did not address the power to or propriety of ordering restitution of excessive fees, but such restitution, as a condition of resuming the practice of law, has become standard. E.g., The Florida Bar v. Lowe, 508 So.2d 6 (Fla. 1987); The Florida Bar v. Kirtz, 445 So.2d 576 (Fla. 1984).
As has been recognized for many years, "[d]isciplinary proceedings against attorneys are instituted in the public interest and to preserve the purity of the courts. No private rights except those of the accused attorney are involved." Application of Harper, 84 So.2d 700, 702 (Fla. 1956); Winn, 208 So.2d at 810-11; In re Keenan, 287 Mass. 577, 583, 192 N.E. 65, 68 (1934). See also State ex rel. Kehoe v. McRae, 49 Fla. 389, 394-95, 38 So. 605, 607 (1905) ("disbarment proceedings are not designed as a penalty or punishment for any malfeasance or dereliction of duty by an attorney, but are solely for the purpose of purging the roll of legal practitioners of an unworthy or disreputable member") (emphasis deleted). This Court has also long held, however, that
one applying to the courts for reinstatement to practice law after having been disbarred for misconduct has resting upon him the duty to show unto the court that he is at the time of such petition for reinstatement a person of good moral character and that his conduct and reputation is such as to warrant him in being entrusted with the honorable and important duties of an attorney at law.
Branch v. State, 120 Fla. 666, 670-71, 163 So. 48, 49 (1935). Reinstatement after disbarment or suspension can be conditioned "upon the making of partial or complete restitution to parties harmed by the petitioner's misconduct which led to the suspension or resignation of his membership in The Florida Bar." Fla.Bar Integr.Rule, art. XI, rule 11.11(9).[8] Charging and collecting an excessive fee can cause harm just as converting a client's funds can. Restitution of an excessive fee, therefore, can be ordered as a condition of readmission or reinstatement, and we recede from Winn to the extent that it conflicts with this holding.
The $1,000,000 which the bar wants ordered returned to Nova, however, is not an excessive fee such as we, or a referee, can order returned. Della-Donna received *312 the $100,000 which the referee found to be an excessive fee for work done on estate tax matters.[9] On the other hand, Della-Donna used the $1,000,000 received from Nova to pay attorneys' fees to his own firm and to other lawyers and firms that represented Della-Donna and the various Goodwin estate entities. These fees were generated in advancing Della-Donna's various claims and positions, found by the referee to be frivolous and unwarranted, and can, in no way, be seen as fees for professional services owed or incurred by Nova.
Disciplinary actions cannot be used as a substitute for what should be addressed in private civil actions against attorneys. The Florida Bar v. Neale, 384 So.2d 1264 (Fla. 1980); Winn; Harper; Keenan. They are not intended as forums for litigating claims between attorneys and third parties, which, in effect, is what the bar seeks regarding Nova's $1,000,000 payment. Restitution can be ordered as a condition of resuming the practice of law, but its only effect can be on one's ability to practice law. We cannot and should not turn restitution as a condition to practicing our profession into a judgment for a third party. We therefore approve and adopt the referee's recommendations as to the restitution to be made as a condition of Della-Donna's readmission.
Turning to the recommended discipline, we agree with the bar that Della-Donna should be disbarred for five years. The bar initiated these proceedings under the former rules, which provided for three-year disbarment. Fla.Bar Integr.Rule, art. XI, rule 11.10(5). The referee held the hearing and submitted his report after the effective date of the current bar rules,[10] which mandate a five-year disbarment. Rules Regulating Fla. Bar, rules 3-5.1(f), 3-7.10(a). We have upheld a five-year disbarment in a similar situation. The Florida Bar v. Greenberg, 534 So.2d 1142 (Fla. 1988), cert. denied, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989). Moreover, even under the former rules, we have disbarred attorneys for more than three years when the cumulative nature of the misconduct warrants a lengthier disbarment. E.g., The Florida Bar v. Cooper, 429 So.2d 1 (Fla. 1983). See also The Florida Bar v. Lowe, 530 So.2d 58 (Fla. 1988). We find that Della-Donna's misconduct fully warrants a five-year disbarment, regardless of which rules are applied.
We hereby disbar Alphonse Della-Donna from the practice of law for a period of five years and thereafter until conditions for readmission (including restitution as set out in the referee's report and costs) are met. In order to give Della-Donna thirty days to protect his clients and close out his practice in an orderly manner,[11] this disbarment will be effective on July 24, 1989. Della-Donna shall accept no new business from the date this opinion is filed. Judgment for costs in the amount of $63,306.17 is hereby entered against Della-Donna, for which sum let execution issue.[12]
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Three experts testified for the bar. They opined that Della-Donna showed "a pattern of misusing the courts to bring frivolous litigation for his own personal benefit" and that his actions were attributable to a "profit motive."
[2] Della-Donna authorized payment to two law firms of $45,000 and $7,597.29, respectively, and $2,529.60 in costs for representing him in the Nova litigation. He never returned these moneys to the estate.
[3] The specific violations of disciplinary rules and the integration rule of the former bar rules are: DR 1-102(A)(3) (illegal conduct involving moral turpitude), (A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), (A)(5) (conduct prejudicial to the administration of justice), (A)(6) (conduct that reflects adversely on fitness to practice law), DR 2-106(A) (illegal or clearly excessive fee), DR 5-105(A) (decline employment if conflict likely), (B) (not continue employment if conflict likely), (C) (full disclosure of possible conflicts), (D) (partners or associates cannot accept or continue employment if conflicts likely), DR 7-102(A)(1) (conduct which serves merely to harass or maliciously injure another), (A)(2) (knowingly advancing an unwarranted claim), rule 11.02(3)(a) (committing act contrary to honesty, justice, or good morals), rule 11.02(4) (clearly excessive, extortionate, or fraudulent fee constitutes grounds for disciplinary proceedings).
[4] $100,000, plus interest at maximum legal interest rate from Oct. 16, 1979.
[5] $45,000, plus interest at maximum legal interest rate from Feb. 2, 1979; $7,597.29 plus interest at maximum legal interest rate on first $1,000 from Nov. 30, 1979 and interest at maximum legal interest rate on $6,597.29 from Apr. 12, 1979; and $2,529.60, plus interest at maximum legal interest rate from Nov. 30, 1979.
[6] $46,498.37, plus interest at maximum legal interest rate from Dec. 9, 1980.
[7] As it existed in 1975, DR 2-106 provided, in part: "(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Also in that year, Fla.Bar Integr.Rule, art. XI, rule 11.02(4) provided, in part: "Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is clearly excessive, extortionate, or the demand is fraudulent." In 1968 the above-quoted portion of rule 11.02(4) read: "Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is extortionate or the demand is fraudulent."
[8] Although this provision currently refers specifically only to reinstatement, rule 3-7.10(k), Rules Regulating Fla. Bar, it should be equally applicable to readmission. Rule 3-7.10(a) provides that readmission will be granted only upon compliance with the rules governing admission to the bar. Rule III, § 4e, Fla.Bd.Bar Exam., requires: "(1) Strict compliance with the specific conditions of any disciplinary, judicial, administrative or other order, where applicable" and "(6) Restitution of funds or property, where applicable." Restitution can, therefore, be ordered as a condition of readmission as well as reinstatement.
[9] According to several witnesses, a Washington, D.C., law firm received $50,000 for estate tax work, and Della-Donna demanded twice what that firm received.
[10] Jan. 1, 1987.
[11] Rule 3-5.1(h), Rules Regulating Fla. Bar, requires disbarred attorneys to notify their clients of the disbarment and to furnish proof of such notice to the bar's staff counsel.
[12] We originally imposed estimated costs of $104,700.10. On rehearing, however, we remanded to the referee for recalculation of costs. Both sides dispute the refigured costs. After studying this matter, we conclude that on the totality of the circumstances the referee has made an appropriate resolution of the costs.