767 So.2d 1163 (2000)
THE FLORIDA BAR, Complainant,
v.
Eileen M. BRAKE, Respondent.
No. SC88104.
Supreme Court of Florida.
September 7, 2000.
*1164 John F. Harkness, Jr., Executive Director and John Anthony Boggs, Staff Counsel, Tallahassee, Florida, and Arlene Kalish Sankel, Bar Counsel, Miami, Florida, for Complainant.
Eileen Brake, Coral Gables, Florida, Respondent, pro se.
PER CURIAM
We have for review a referee's report regarding alleged ethical breaches by Eileen Brake. We have jurisdiction. Art. V, § 15, Fla. Const. The Florida Bar filed multi-count complaints against Mrs. Brake and her now-deceased husband, Robert. By order dated July 26, 1996, this Court consolidated these two cases for consideration by one referee. During the pendency of this appeal, Mr. Brake died, and the Bar voluntarily dismissed the complaint as to Mr. Brake. The case as to Mrs. Brake was at that time severed. We determine that the appropriate discipline as to Mrs. Brake is a public reprimand by publication of this opinion.
The voluminous record in this case reflects the following facts.[1] Eileen Murphy passed away March 30, 1988. Mrs. Murphy, through her will, appointed her daughter, Eileen Brake, to serve as personal representative of her estate. Mrs. Brake retained her husband, Robert Brake, a lawyer with experience in probate matters, to represent her as personal representative. The beneficiaries of Mrs. Murphy's estate were Mrs. Brake, Dennis Murphy, and Richard Murphy, the decedent's three living children, and her daughter-in-law, Eve Murphy. The estate's primary asset was ninety-six shares of stock in a corporation known as Murphy Investments. The corporation's sole asset was an office building. Upon the advice of a tax attorney, Mrs. Brake conveyed the corporation's interest in the building to the estate and then dissolved the corporation. An appraisal executed in December 1988 valued the office building at $690,000.
Four mortgages encumbered this commercial real estate: three were held by Mrs. Brake, and the fourth was held by both Mr. and Mrs. Brake. The first three mortgages, executed before Mrs. Murphy's death, secured loans to pay expenses for *1165 the corporation holding title to the property. The fourth mortgage, executed in December 1988 while Mrs. Brake was personal representative of Mrs. Murphy's estate, secured a loan for payments necessary to dissolve the corporation. The Brakes did not seek court approval before encumbering estate property.
After Mrs. Murphy's death, Mrs. Brake and her siblings decided that the property should be sold for a cash price of $700,000 with a condition of sale being that the property be accepted by the buyer "as is." An offer was tendered by a prospective buyer,[2] but the contract had conditions that the Brakes believed to be unacceptable. A controversy between the siblings concerning this offer ensued, and a sale of the property to this prospective purchaser was never consummated.
In 1990, the Brakes filed a foreclosure action on their mortgages because the statute of limitations was about to expire and the beneficiaries of the estate would not agree to waive the statute of limitations. Substantial other litigation also arose among the siblings out of the performance of the personal representative's duties by Mrs. Brake and the representation of Mrs. Brake in her role of personal representative by Mr. Brake.[3]
Mrs. Brake and Dennis Murphy purchased the office building in May 1992 for $595,000. On June 22, 1993, one day after a probate judge entered a substantial surcharge order against Mrs. Brake for malfeasance in the administration of the estate, Mrs. Brake transferred her one-half interest in the building to Mr. Brake.
The Bar's allegations of ethical misconduct, including conflicts of interest, self-dealing, and fraud, stem from Mrs. Brake's handling of the sale of the commercial real estate and Mr. Brake's representation of Mrs. Brake as personal representative. The litigation arising out of Mrs. Murphy's estate and the sale of the office building appropriately has been called "interminable and vexatious." See Brake v. Estate of Murphy, 719 So.2d 333, 333 (Fla. 3d DCA 1998); see also Brake v. Swan, 733 So.2d 1051 (Fla. 3d DCA 1999); Brake v. Murphy, 688 So.2d 403 (Fla. 3d DCA 1997); Brake v. Third District Court of Appeal, 666 So.2d 142 (Fla.1995), cert. denied, 516 U.S. 1147, 116 S.Ct. 1019, 134 L.Ed.2d 99 (1996); Brake v. Murphy, 687 So.2d 842 (Fla. 3d DCA 1996), review denied, 697 So.2d 1217 (Fla.1997); Brake v. Estate of Murphy, 678 So.2d 374 (Fla. 3d DCA 1996); Brake v. Murphy, 661 So.2d 834 (Fla. 3d DCA 1995); Brake v. Murphy, 636 So.2d 72 (Fla. 3d DCA 1994), vacated by Brake v. Murphy, 693 So.2d 663 (Fla. 3d DCA), review denied, 700 So.2d 686 (1997); Murphy v. Estate of Murphy, 621 So.2d 443 (Fla. 3d DCA 1993); Brake v. Stettin, 599 So.2d 669 (Fla. 3d DCA 1992); Brake v. Murphy, 591 So.2d 1025, 1026 (Fla. 3d DCA 1991), enforcement denied, Brake v. Murphy, 626 So.2d 325 (Fla. 3d DCA 1993); In re Estate of Murphy, 573 So.2d 424 (Fla. 3d DCA 1991); Brake v. Estate of Murphy, 559 So.2d 1146 (Fla. 3d DCA 1990).
*1166 The referee recommended that Mrs. Brake be found guilty of violating rule 4-8.4(c) and (d). With respect to these recommendations, the referee's order states:
A. Introduction

The Florida Bar has filed five separate counts against each of the Respondents. The majority of the charges are based upon conflicts of interest. Respondents maintain that these actions by the Bar are merely attempts by Eve Murphy and her lawyer, Richard Golden to extort a settlement. The Respondents have also consistently argued during these disciplinary proceedings through written motions and oral argument, that the Bar's investigation and prosecution has been in bad faith by Bar counsel. Mr. and Mrs. Brake further assert that they were acting in the best interests of the estate and beneficiaries at all times and that there were never any conflicts of interest.
. . . .

Count II: This Count charges Mrs. Brake with a violation of Rule 4-8.4(d) which states in pertinent part:
"A lawyer shall not: ...
(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis...."
The Referee finds that Mrs. Brake followed the lead of Mr. Brake in their interpretation of the Degani offer, leading to a failure to finalize a sale. In her capacity as Personal Representative, Mrs. Brake was required to maintain a position of fiduciary responsibility which she was obligated to exercise in the best interests of the estate and the other beneficiaries.
The Referee finds that although Mrs. Brake may have subjectively believed that the Degani offer was not valid as presented, she had an affirmative duty to negotiate terms in an effort to come to a firm agreement. Further, since Mrs. Brake had several financial interests in the subject property, it was impossible for her to conduct her responsibilities objectively. Additionally, Mrs. Brake's decision to file adversary proceedings against the beneficiaries increased the antagonism, multiplied the conflicts of interest and prolonged the resolution of the estate proceedings.
Count III
This Count again charges Mrs. Brake with a violation of Rule 4-8.4(d) as in Count II and with a violation of 4-1.8(a) as in Count I above.
Rule 4-1.8(a) does not apply because Mrs. Brake was not in an attorney-client relationship. The Referee finds that filing the foreclosure action on the fourth mortgage constituted a violation of Rule 4-8.4(d) for the reasons stated above and was contrary to Mrs. Brake's fiduciary duties to the other beneficiaries.
Count IV
The Bar charges Mrs. Brake with violation of Rule 4-1.7(a) as in Count I above and Rule 4-4.1(b)....
Count IV also charges Mrs. Brake with a violation of Rule 4-8.4(c)....
Finally, Count IV again charges Mrs. Brake with a violation of Rule 4-1.8(a), as in Counts I and III above.
Once again, Rules 4-4.1(b), 4-1.7(a) and 4-1.8(a) do not apply where there is no attorney-client relationship. However, as explained in Count IV above as to Mr. Brake, the Referee finds that Respondents' explanations as to why they conveyed Mrs. Brake's interest to Mr. Brake are without merit. The Referee finds that Mrs. Brake placed her own interests as well above those of the beneficiaries, despite an absolute conflict.
Count V
This Count charges Mrs. Brake with a violation of Rule 4-3.4(c) which states:
"A lawyer shall not:

*1167 (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."
The Referee finds that the Bar has failed to meet its burden of proof as to this Count.
The referee recommended that Mrs. Brake be suspended for ninety days:
The Bar seeks a suspension of one (1) year as to Mrs. Brake's violations. Even more so in Mrs. Brake's case, she was in a fiduciary position to family members. Mrs. Brake appears to be a very devoted wife and mother. Given the circumstances of her life at this time, it is perfectly reasonable that she also is quite agitated and emotionally shaken at the Bar's charges and the disruptions they have caused in her life. However, the Referee finds that a good deal of the problems in the estate proceedings were caused by clouded judgment and an inability to admit that her financial interests in the subject property and antagonistic courses of action were not in the best interest of the estate or other beneficiaries.
In light of Mrs. Brake's fragile mental state, noting that Mrs. Brake is not practicing law, although admitted to the Bar for over forty-five (45) years and there being an absence of prior disciplinary history, the Referee finds that an appropriate penalty is ninety (90) days suspension from the practice of law.
By separate order, the referee awarded $17,609.92 in costs to The Florida Bar.
Respondent Robert Brake died during the pendency of this appeal, and the complaint against him has been voluntarily dismissed.
Respondent Mrs. Brake raises several issues with respect to the referee's findings of fact and recommendations of guilt based on these findings.[4] Our standard of review in this respect is as follows:
A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Absent a showing that the referee's findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions.
Florida Bar v. Sweeney, 730 So.2d 1269, 1271 (Fla.1998) (quoting Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996) (citations omitted)). Applying this standard here, we approve one and reject two of the referee's recommendations regarding Mrs. Brake's guilt.
In her first issue, Mrs. Brake argues that the referee erred in finding that she violated rule 4-8.4(d) by failing to negotiate with the Deganis in good faith. The Bar charged Mrs. Brake with violating rule 4-8.4(d), based on an allegation that she breached her fiduciary duties to the beneficiaries of the estate by not negotiating in good faith with the Deganis. Rule 4-8.4(d) states in pertinent part that a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice." Mrs. Brake argues that this rule does not apply to her in this case because her employment as personal representative did not constitute the practice of law.
*1168 The Bar contends that we rejected Mrs. Brake's argument in Florida Bar v. Della-Donna, 583 So.2d 307, 310 (Fla.1989). In that case, the referee recommended that the lawyer be found guilty of violating several rules of professional conduct based on his service as a personal representative. The lawyer argued that the ethical rules did not apply to him because he was not acting in a legal capacity. This Court rejected that argument and wrote:
Like the referee, we cannot agree with Della-Donna's contention that our rules and professional ethics do not apply to an attorney who acts, at some time or another, as a client rather than as an attorney. Conduct while not acting as an attorney can subject one to disciplinary proceedings. As this Court has stated before, "`an attorney is an attorney is an attorney.'" Even in personal transactions and when not acting as an attorney, attorneys must "avoid tarnishing the professional image or damaging the public." We agree with the referee that this claim is simply untenable. The practice of law is a privilege which carries with it responsibilities as well as rights. That an attorney might, as it were, wear different hats at different times does not mean that professional ethics can be "checked at the door" or that unethical or unprofessional conduct by a member of the legal profession can be tolerated.
Id. at 310.
Della-Donna, however, is not applicable to rule 4-8.4(d). The general rule espoused in Della-Donna is expressly stated in Rule of Discipline 3-4.3 which provides in relevant part that "[t]he commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise ... may constitute a cause for discipline." Della-Donna was found guilty of, among other things, violating the now-dated Disciplinary Rule 1-102 which stated that a lawyer shall not engage in conduct that is prejudicial to the administration of justice. By comparison, rule 4-8.4(d) states that a lawyer shall not "engage in conduct in connection with the practice of law that is prejudicial to the administration of justice." Under its express language, rule 4-8.4(d) represents an exception to the general rule and applies only when a lawyer engages in misconduct while employed in a legal capacity. Because Mrs. Brake was not employed in a legal capacity when appointed to serve as personal representative, the referee erred in finding that Mrs. Brake violated rule 4-8.4(d) by failing to negotiate in good faith with the Deganis.[5] However, the lesson taught by our decision in Della-Donna was applicable to Mrs. Brake in her capacity as personal representative, and we find that there is competent, substantial evidence to find that her performance as personal representative was in violation of the ethical requirements we set out in Della-Donna.
In her third issue, Mrs. Brake argues that the referee erred in finding that her June 23, 1993, quitclaim conveyance to Mr. Brake one day after a surcharge order was entered against her was fraudulent. We conclude that the record contains competent evidence that Mrs. Brake effected the transfer for the purpose of defrauding a creditor. The record also contains sufficient evidence to support the referee's rejection of a resulting trust. We approve the referee's recommendation on this issue. We find no merit in Mrs. Brake's issues three or four, which do not merit further discussion.
Our scope of review of a referee's recommended discipline is broader than that afforded to reviewing findings of fact because it is this Court that is vested with *1169 the responsibility to determine the appropriate sanction. See Florida Bar v. Kassier, 730 So.2d 1273 (Fla.1998). As we have often stated, discipline should accomplish three goals:
First, the judgment must be fair to society, both in terms of protecting the public from unethical conduct and at the same time not denying the public the services of a qualified lawyer as a result of undue harshness in imposing penalty. Second, the judgment must be fair to the respondent, being sufficient to punish a breach of ethics and at the same time encourage reformation and rehabilitation. Third, the judgment must be severe enough to deter others who might be prone or tempted to become involved in like violations.
Florida Bar v. Cibula, 725 So.2d 360, 363 (Fla.1998) (quoting Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994)).
In respect to Mrs. Brake, we also find her violation to be serious. However, we take into consideration that she has not actively engaged in the practice of law since her admission to The Florida Bar in 1950 and is on inactive status with the Bar. We also take into consideration that her conduct was based upon the advice and counsel of her husband, who was acting as her legal representative. For this reason, we conclude that the appropriate discipline for Mrs. Brake is a public reprimand by publication of this opinion.
We remand to the referee the assessment of costs in this case, in that costs were assessed in the consolidated cases.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] The hearing before the referee lasted five days, and the transcript of this hearing is more than 1000 pages. Besides the disciplinary hearing transcript, the record contains transcripts from a mortgage foreclosure trial, a surcharge trial, and a trial on a motion to set aside a fraudulent conveyance of real property.
[2] The prospective buyers were Mr. and Mrs. Degani.
[3] In one of its many opinions regarding the Murphy estate, the Third District provided the following guidance to the parties:

As a final matter, however, we urge the parties to conclude this seemingly interminable course of litigation.
It has been well said that there must be some point in every court proceeding when the cause is finally disposed of, its thread cut, and the parties out of court.... The public welfare demands that there shall be some definite end to litigation-a point sometime, somewhere, when every case is terminated. We cannot afford to return to the interminable and outrageous practice similar to that depicted in Dickens' case of Jarndyce v. Jarndyce.
Mabson v. Christ, 96 Fla. 756, 759, 119 So. 131, 132 (1928). Before this probate case assumes such Dickensian proportions, we trust that the parties will resolve their differences once and for all.
Brake v. Estate of Murphy, 678 So.2d 374, 376 (Fla. 3d DCA 1996).
[4] Mrs. Brake's claims are essentially as follows: (1) the referee erred in recommending that Mrs. Brake violated rule 4-8.4(d); (2) the referee erred in finding that the June 22, 1993, transfer was fraudulent; (3) the actions of The Florida Bar in this case violate due process and constitute acts of gender bias; (4) the Bar and the referee grossly exceeded the applicable time limits; and (5) the referee erred in recommending a ninety-day suspension.
[5] For this same reason, we conclude, in respect to Mrs. Brake's second issue, that the referee erred in finding that she violated rule 4-8.4(d) by filing the mortgage foreclosure action.